**James Michael LINEBACK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 82S00–8807–CR–621.**

Supreme Court of Indiana.

Aug. 16, 1989.

Glenn A. Grampp, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of fifty (50) years.

The facts are: Appellant had provided Roger D. Hobgood, the victim in this case, with cocaine. Hobgood had failed to pay for the cocaine. Appellant became concerned that he was not being paid and stated that something had to be done and that he would do whatever was required to make Hobgood pay.

The night of the shooting, appellant attempted to locate Hobgood without success. Later that evening while appellant was standing outside the Pizza Den in Evansville, Hobgood drove by in his truck. Appellant tried unsuccessfully to flag him

down. When Hobgood came by a second time, he pulled to the curb and parked near appellant. At that point, appellant's friends left him alone with Hobgood and entered the Pizza Den. Shortly thereafter they heard several shots fired.

Robert McCarty testified that he ran out to investigate and saw appellant fire the last shot into Hobgood while Hobgood had his hands raised pleading, "No, No." Appellant tried to make McCarty believe that someone else had shot Hobgood and had escaped down the street. McCarty, however, saw no other person. Appellant then ran back into the Pizza Den where he made arrangements to have Monica Slaughter, who boarded at appellant's house, drive his car home. He then left through a back door and ran home. On his way, he hid his gun and some items of clothing in an alley.

When he arrived home, appellant enlisted the help of his wife and Slaughter in disposing of some of his clothing and attempted to plant false reports that he had left the Pizza Den earlier that night. He also made calls expressing surprise that Hobgood had been shot.

Monica Slaughter testified that when she arrived at appellant's home with the car, appellant told her he had just shot Hobgood and "he said he killed him because he had to make an example of him because he owed him for drugs." Appellant further told Slaughter that he started shooting when Hobgood said he did not have the money and that Hobgood yelled that he had the money after the initial shots. Hobgood did in fact have $170 on his person at the time he was killed.

Appellant testified that he shot Hobgood in self-defense. He relied upon the fact that Hobgood had a reputation for violence. He further stated that he believed Hobgood carried a pistol in his boot and that when he approached Hobgood's truck he thought that Hobgood was reaching for a gun in his boot. However, following the shooting there was no gun found on or near Hobgood.

Appellant further testified that, although he had emptied his gun shooting at Hobgood, he ran from the scene because he

thought Hobgood would still shoot at him. Evidence showed that Hobgood had six separate bullet wounds in his body.

█ Appellant claims the trial court abused its discretion by excusing a prospective juror due to his prior service on a petit jury within the past year. Appellant makes the correct statement that prior jury service is no basis for summarily excluding a juror from sitting in a subsequent case, citing *Resnover v. State* (1978), 267 Ind. 597, 372 N.E.2d 457; *Holt v. State* (1977), 266 Ind. 586, 365 N.E.2d 1209.

In the case at bar, the prospective juror had been a member of the previous jury panel in the Vanderburgh Circuit Court and had sat on a petit jury during that time. A new panel had been assembled for service in circuit court at the beginning of appellant's trial. When the trial judge learned that the prospective juror had served on the previous panel, he first had an extended discussion with counsel for both the State and the defense, and although defense counsel objected to the juror being excused, the judge ruled that he should not be required to serve on two successive panels. We have previously held that trial courts have discretionary authority to excuse prospective jurors. *See Jones v. State* (1989), Ind., 540 N.E.2d 1228, citing *Lytle v. State* (1987), Ind., 503 N.E.2d 1222.

Here, as in the *Jones* case, appellant does not object to the composition of the jury nor does he make an allegation or showing of how he was prejudiced by the dismissal of the prospective juror. Under the circumstances set forth in this record, it would appear the trial judge would have been remiss to have required a citizen to serve on two consecutive panels assembled for jury duty. The trial court did not err in excusing the prospective juror.

█ Appellant contends the trial court erred in allowing the State to inquire as to whether appellant previously had been "convicted in 1972 of physical infliction of an injury while engaged in a robbery?" Appellant objected on the ground that infliction of an injury in the perpetration of a robbery was not a conviction which could

be shown as a prior impeachable offense. He takes the position that the crime is not robbery but is the infliction of an injury and should have the same status as manslaughter so far as impeachable offenses are concerned. The State correctly argues that the core offense of which appellant had been convicted was robbery and that robbery is in fact an impeachable offense.

The statute in force at the time of appellant's prior conviction read as follows:

"Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery.... Whoever inflicts any wound or other physical injury upon any person with [described weapons] while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life." Ind.Code § 35-13-4-6 (Repealed by Acts 1976, P.L. 148, § 24, effective July 1, 1977.) For the present law see Ind.Code § 35-42-5-1.

There is no question that a conviction under this statute is a conviction for robbery. *Johnson v. State* (1974), 262 Ind. 164, 313 N.E.2d 535. A robbery is one of the crimes which may be used to impeach a witness. *Trice v. State* (1988), Ind., 519 N.E.2d 535; *Hodge v. State* (1982), Ind., 442 N.E.2d 1006; *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. The trial court did not err in allowing the State to question appellant concerning his prior conviction for robbery.

■ Appellant claims the trial court erred when during the deliberation of the jury they requested and received the written instructions to be further considered during their deliberation. Appellant cites cases wherein the trial court had failed to read the instructions to the jury and had simply sent them to the jury room. In such cases, we have held such conduct to be reversible error. *Foresta v. State* (1980), 274 Ind. 658, 413 N.E.2d 889; *Drake v. State* (1979), 271 Ind. 400, 393 N.E.2d 148.

However, in the case at bar, the trial judge read each instruction to the jury before they began deliberation. This Court has held that when the instructions have been read by the court to the jury, reversible error will not result if the instructions are then given to the jury with no verbiage or remarks which would "give rise to a potential for misconstruction or undue emphasis, or do not present a danger of speculation by the jury as to the relative importance of different instructions." *Denton v. State* (1986), Ind., 496 N.E.2d 576, 585.

Appellant makes no claim that the instructions furnished to the jury were improperly marked or that improper comment was made by the judge upon submitting them. We find the trial court did not commit reversible error in submitting the written instructions to the jury after they had been read in their entirety.

■ Appellant contends the jury verdict is not supported by sufficient evidence in that the State failed to disprove his claim of self-defense. Subsequent to the filing of his brief, appellant submitted an additional authority, *Cobbs v. State* (1988), Ind., 528 N.E.2d 62. However, there is a vast difference in the factual situation in appellant's case and that presented in *Cobbs*. In *Cobbs*, there were no witnesses to the crime and Cobbs gave a very lucid and logical explanation of what had occurred. The State had absolutely no evidence upon which to base Cobbs' conviction except that the shooting had occurred.

In the case at bar, there is evidence that appellant indicated he was going to collect his money from Hobgood in whatever manner required. One witness saw him fire the final shot into Hobgood's body while Hobgood had his hands raised shouting, "No, No." There is the additional evidence that after the shooting, appellant stated that he shot Hobgood as an example because he had not paid for his cocaine.

Appellant also claims there is no evidence to contradict his claim of fear of Hobgood and his belief that Hobgood was armed. However, in the case at bar, it is clear that appellant was the aggressor in that he freely approached Hobgood while he was seated in his truck. This very act

indicated he had very little fear of Hobgood even though he states he believed he was armed. The jury was therefore justified in finding that he was the aggressor, thus denying him the claim of self-defense. *Freeze v. State* (1986), Ind., 491 N.E.2d 202.

There is ample evidence in this record to support the jury's conclusion that appellant was the aggressor, that he deliberately approached Hobgood with the intent of collecting his money in whatever manner necessary, and that his claim of self-defense was not credible.

The record in this case is ample to support the verdict of the jury. The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.