**Danny L. FISHER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 53S00–9403–CR–255.

Supreme Court of Indiana.

Oct. 7, 1996.

Rehearing Denied Dec. 17, 1996.

Eugene C. Hollander, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, James A. Joven, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee–Plaintiff.

BOEHM, Justice.

A jury convicted Danny L. Fisher of two counts of murder,[1] one count of attempted murder,[2] and one count of criminal recklessness.[3] The trial court sentenced Fisher to a total term of 173 years in prison. Fisher raises two issues for our review on this appeal:

I. Were the convictions supported by sufficient evidence?

II. Was the sentence imposed manifestly unjust?

We affirm.

## I. Factual & Procedural Background

This case arose out of events that took place in a hotel room in Bloomington on the night of November 27, 1992 and early morning hours of November 28, 1992. The evidence at trial showed that Brian Moore (then aged 21), Christopher Moore (18), Greg Nelson (18), and Angela Hamm (16) gathered to celebrate Greg's pending departure to join the Marine Corps. The three young men had arranged to meet Angela early that evening. Angela suggested including Carleen Corley (16), the daughter of defendant Fisher's girlfriend, in the celebration. After meeting up with Carleen, the five decided to rent a hotel room for the night, and an alcohol-related celebration ensued. Brian and Chris drank so much whiskey that Brian

fell asleep and Chris vomited several times. Carleen asked Greg to drive her home, but Greg refused, citing his intoxication. Carleen eventually took a cab to her home, where she lived with her mother and Fisher. Shortly after arriving home, Carleen told Fisher that the young men had gotten her drunk and that she had sex with one of them against her will. Fisher awakened Carleen's mother and told her Carleen's story. The mother then stated that she and Carleen would return to the hotel and call the police from there.

Fisher retrieved the mother's loaded handgun from a dresser in her house and followed Carleen and her mother to the hotel in his own vehicle. Upon Fisher's arrival at the hotel, Carleen pointed out the room to Fisher, who knocked on the door and identified himself as "room service." Fisher made his way into the room and a brief discussion ensued between Fisher and the others, the details of which were unclear at trial. Fisher then pulled out the gun and shot each of the three boys. Chris died of a single gunshot wound to the head, Greg was killed by a single bullet that passed through his elbow and struck his heart, and Brian survived to testify at trial. After firing the shots, Fisher ran down a hallway in the hotel and Angela chased after him. At one point Fisher stopped running, grabbed Angela, threw her against a wall in the hallway, and pointed the gun at her head. After telling Angela he could not "kill a bitch," Fisher fled the hotel and was later apprehended in Mississippi. Fisher gave a tape-recorded statement to the arresting authorities in Mississippi, which was played for the jury at trial.

A jury in Monroe County convicted Fisher on all counts—two counts of murder, one count of attempted murder, and one count of criminal recklessness. The trial court imposed the maximum sentence on each count: 60 years for each murder charge, 50 years for attempted murder, and three years for criminal recklessness. The court further ordered that the sentences be served consecutively. This direct appeal followed. We

---

1. IND.CODE § 35–42–1–1 (Supp.1992).

2. IND.CODE § 35–41–5–1 (1988).

3. IND.CODE § 35–42–2–2 (1988).

have jurisdiction under Indiana Appellate Rule 4(A)(7).

## II. Sufficiency of the Evidence

■ The facts recited above were the subject of both Brian's and Angela's testimony. The statement to the Mississippi police was also admitted. Fisher asserts that his two murder convictions are not supported by sufficient evidence. Specifically, Fisher contends that he did not intend to kill anyone that night, but was provoked by the youths when he met them in the hotel room. Fisher claims the callous reactions of Chris, Brian, Greg and Angela to Fisher's presence in the room caused Fisher to shoot them in the heat of passion. This provocation, Fisher argues, supports convictions for voluntary manslaughter based on "sudden heat" but not murder.

■ Existence of sudden heat is a classic question of fact to be determined by the jury. *Bane v. State*, 587 N.E.2d 97, 100 (Ind.1992), *reh'g denied.* Although Fisher did not present any evidence in his own defense, his claim of sudden heat was indirectly presented to the jury in the form of Fisher's taped statement to the Mississippi police. The trial court instructed the jury as to the elements of murder and voluntary manslaughter. Thus, to the extent Fisher asserted sudden heat at trial, the jury was unpersuaded. When evaluating claims of insufficient evidence, we do not reweigh evidence or assess the credibility of witnesses. As an appellate tribunal, we assess only whether reasonable inferences drawn from the evidence support the verdict. A conviction will be affirmed if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995).

Although Fisher disclaims any intent to harm the youths, he retrieved a loaded gun before going to the hotel that night. Based on this evidence, and the other evidence offered at trial, the jury could reasonably have found Fisher guilty of murder beyond a reasonable doubt. Accordingly, Fisher's claim of error on grounds of insufficient evidence fails.

## III. Review of the Sentence ˙

■ The second issue presented is whether the sentence imposed was manifestly unjust. We will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B)(1). A sentence is not manifestly unreasonable if a reasonable person could find the sentence appropriate to the particular offense and offender. App.R. 17(B)(2). Concurrent sentences are within the trial court's discretion so long as it is clear what factors the court considered in arriving at the length of the sentence. *Marshall v. State*, 621 N.E.2d 308, 322 (Ind.1993).

Fisher again asks us to reweigh factors not within our province to consider on appeal. Fisher's objection to the 173–year sentence focuses on his pre-trial psychiatric evaluation, which recommended Fisher not receive consecutive sentences. The trial court acknowledged the evaluation, but accorded its conclusions little weight. This the trial court was entitled to do. In light of Fisher's lengthy criminal record, increasingly violent behavior, lack of mitigating circumstances—all of which the trial court documented during the sentencing hearing—as well as the nature of the murders Fisher committed in this case, we cannot say the sentence imposed was manifestly unreasonable.

■ Fisher's argument that concurrent sentences are warranted because these crimes all purportedly arose out of "one act" flies in the face of applicable law: murder of one person is a separate offense. IND.CODE § 35–42–1–1 (Supp.1992). Hence, the merger doctrine does not apply here. Most of the decisions Fisher cites to support his argument involved improper application of the habitual offender statute, and therefore are inapposite.

## IV. Conclusion

The jury convictions and sentence imposed by the trial court are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.