Denon A. TAYLOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–9511–CR–1260.

Supreme Court of Indiana.

June 12, 1997.

M.E. Tuke, Indianapolis, for appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for appellee.

BOEHM, Justice.

A jury convicted Denon A. Taylor of one count of murder, one count of attempted murder, a Class A felony, and carrying a handgun without a license, a Class A misdemeanor. The State initially sought the death penalty, but withdrew that request before trial. Taylor was sentenced to a combined term of 100 years in prison. In this direct appeal, he raises five issues for our review:

I. Did the trial court commit reversible error in its instruction that "lying in wait" can be proof of specific intent to commit murder?

II. Did the instruction's "emphasis on lying in wait" impermissibly shift the burden of persuasion to the defendant as to intent?

III. Did the presence in the jury room of a withdrawn death sentence request constitute reversible error?

IV. Were the convictions supported by sufficient evidence?

V. Was the sentence imposed manifestly unreasonable?

We affirm.

### Factual and Procedural Background

Denon Taylor was convicted by a jury of murdering his wife, Dorthea Taylor. Dorthea was killed in the early morning hours of December 6, 1992, outside the Indianapolis apartment building where she had taken an apartment the day before. She had filed for divorce on September 29, 1992, and had obtained a restraining order against Taylor on November 23, 1992, based on his physical abuse and threats to kill her.

Cecil Holly also had an apartment in Dorthea's new building. On the evening before her death, Dorthea was to attend an office Christmas party. She lent her car to Holly who dropped her off at a friend's house to proceed to the party. Holly then picked up his youngest brother and a friend. As the three were driving in downtown Indianapolis, they coincidentally passed Taylor, who recognized Dorthea's car and pursued it. At one stop, Taylor initiated a verbal exchange with Holly and challenged Holly's use of Dorthea's car. At a second stop Holly could see Taylor

possessed a handgun. With Taylor following, Holly then drove to a nearby nightclub where he knew off-duty police served as security guards and informed a guard in the parking lot of the club that Taylor had a handgun. The officer searched Taylor, but found no gun on his person. The guard then told Holly to leave while he spoke with Taylor. Holly returned to his home where Taylor telephoned him three times within an hour. Among other things, Taylor said that if he could not have Dorthea, nobody could, and that he would kill her. After the last of the calls, Holly received a page from Dorthea and went to pick her up at her friend's house.

In the meantime, after the last of his calls to Holly, Taylor telephoned Alif Rogers, a friend, and asked him to come over to Taylor's home, which Rogers did. When Rogers arrived, Taylor got in the car, and told Rogers to drive to Dorthea's apartment building. On arrival, the two drove around the parking lot looking for Dorthea's car. When they did not find the car, at Taylor's instruction, Rogers backed into a parking space facing the apartment house to await Dorthea's return.

Holly and Dorthea arrived in Dorthea's car about thirty or forty minutes later. Once more at Taylor's instruction, Rogers followed the car until Holly parked and Holly and Dorthea proceeded on foot toward the building. At that point Taylor jumped from Rogers' car and ran toward them yelling, "Yeah, yeah I got you now. I got you now, bitch. You're going with me." Dorthea refused, and Taylor struck her with a gun he had removed from his waistband. Dorthea told Holly to call the police and, as Holly ran, Taylor fired a shot at Holly. Holly first dove for the ground, then fled to the building. From the building Holly could see Taylor drag Dorthea by her hair and hear both continuing to shout. Finally, Taylor first threatened to kill Dorthea if she did not come with him, then pulled her head up to the pistol and fired.

The foregoing is largely taken from Holly's testimony. Rogers' version of these events is that he stayed in his car listening to a loud tape after Taylor got out to confront Holly and Dorthea. At the time he removed the tape to listen to the other side, he heard a muffled gunshot. As he turned to look, Taylor jumped in the car. Rogers asked Taylor if he was trying to scare Dorthea. Taylor responded that he had shot her.

Taylor appeals his convictions and sentence. We have jurisdiction under Indiana Appellate Rule 4(A)(7).

## I. The Instruction on Lying in Wait

Taylor argues that the trial court erred in Instruction 17 by instructing the jury, assertedly over defense objection, that lying in wait can be proof of a defendant's specific intent to commit murder. Specifically, the court instructed the jury that

[l]ying in wait with a deadly weapon can be proof of a defendant's specific intent to commit the crime of murder, lying in wait includes the elements of waiting, watching, and concealment in order to take the victim by surprise with the intent to kill the victim.

Taylor contends this instruction was an incorrect statement of law as it applies to the facts of this case and that it was not supported by the evidence.

■ The State contends that Taylor failed to object to the jury instruction at trial and has waived the issue. The State also argues that the instruction is a correct statement of law. Taylor asserts he objected to Instruction 17, but as supporting record evidence he cites only to a copy of the instruction as tendered by the State which contains an anonymous handwritten annotation, "given over [Defendant's] obj." The record discloses no other reference to a defense objection to this instruction. Indiana Criminal Rule 8(B) provides that no error regarding the giving of instructions is available on appeal unless specifically stated at trial, or submitted in writing to the court, prior to argument: "All instructions given or refused, and all written objections submitted thereto, shall be filed in open court and become a part of the record in the cause.... Objections made orally shall be taken by the reporter and may be made a part of the record by a ... bill of exceptions." Ind.Crim. Rule 8(C). In *Ford v. State*, 555 N.E.2d 829, 831 (Ind.1990), we found that an alleged error regarding the giving of an instruction was

waived because the appellant had not provided a sufficient record of the arguments to the trial court regarding the challenged instruction. Thus, regardless of whether objection was made at trial, the absence of a record reflecting the specific objections precludes our consideration of the alleged error.

■■■ Second, since the evidence demonstrated that Taylor placed a gun against his victim's head and fired, there can be little issue over his intent to kill. As a result, even if not waived, the instruction would not constitute reversible error. Third, the instruction cannot be the basis of reversible error because it is at best circular. It permits the inference of intent to kill from the fact that the perpetrator lay in wait "with intent to kill." If the jury found the elements required by this instruction, there is no need to infer anything more with respect to defendant's intentions in the parking lot of Dorthea's apartment. Because Holly testified to Taylor's threats to kill Dorthea shortly before the event, the jury had evidence from which it could find the lying in wait to have been for that purpose.

## II. The Burden of Persuasion

■■■ Taylor argues that the "emphasis on lying in wait" in Instruction 17 impermissibly had the effect of shifting the burden of persuasion from the State to the defendant as to the intent required for a murder conviction. If this were correct, the instruction would be impermissible under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

■■■ "A jury instruction will be found to violate the Fourteenth Amendment [under *Sandstrom* and its progeny] where it is reasonably likely that the jury interpreted the instruction as shifting to the defendant a burden of persuasion on the intent element." *Winegeart v. State*, 665 N.E.2d 893, 903 (Ind. 1996). In *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), following *Sandstrom*, the U.S. Supreme Court held that a reviewing court

> must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive

inference.... A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

> ... A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Id.* at 314–15, 105 S.Ct. at 1971, 85 L.Ed.2d at 353–54 (citations and footnote omitted). In this case, Instruction 17 uses the term "can." This, like "may" in *Winegeart*, is a permissive term that does not require the jury to reach any particular conclusions, but merely permits the jury to draw appropriate inferences from the evidence. The instruction was permissible under *Sandstrom*.

## III. Jury Access to Death Penalty Request

Taylor also contends that the cumulative effect of Instruction 17 and the presence in the jury room of the withdrawn death sentence request "was to permit the State to have a *de facto* additional partial closing argument" with the effect of "tipping the balance from a finding of sudden heat by improperly highlighting one portion of the evidence and by urging an improper legal conclusion." In support of this contention, Taylor relies on *Thomas v. State*, 259 Ind. 537, 289 N.E.2d 508 (1972) (reversible error to allow written witness statements to be taken into the jury room where the statements were admitted only for impeachment and not for the truth of the matters set forth); *Ortiz v. State*, 265 Ind. 549, 356 N.E.2d 1188 (1976) (no error to re-read to the jury at its request a statement by one defendant to police that had been admitted into evidence); and *Shaffer v. State*, 449 N.E.2d 1074 (Ind.1983) (reversible error to allow the jury to listen to three and one-half hours of testimony during deliberations). These cases are all inapposite. At issue here is the impact of the presence in the jury room of two items: (1) an instruction and (2) extraneous material, the dismissed death sentence request. Neither presents the presence of selected pieces of evidence in the jury room.

The trial court has discretion to submit written instructions to the jury after they have been read in their entirety. *Lineback v. State,* 542 N.E.2d 195, 197 (Ind.1989). Because the instruction was not reversible error, and the trial court has discretion to allow instructions in the jury room, no reversible error occurred by its inclusion with the body of instructions submitted to the jury.

The death penalty request should not have been submitted to the jury. However, the trial court proceeded correctly to evaluate the effect, if any, of this error and determined there was none. The jury may be examined as to exposure to improper extrinsic materials during deliberations. *Fox v. State,* 457 N.E.2d 1088, 1093 (Ind.1984). The State bears the burden of establishing that the extrinsic material was harmless. *Butler v. State,* 622 N.E.2d 1035, 1040 (Ind. Ct.App.1994), *reh'g denied, trans. denied.* The trial court's evidentiary hearing disclosed that the jury foreman did not remember seeing or reading the death penalty request, but did remember one female juror's asking about it after the verdict was reached. Only one juror, a woman, remembered seeing the document, and also recalled having some discussion with someone about it, but could not remember if it was during or after deliberations. She did not believe the document was read to the jury. A third juror remembered that after the verdicts had been reached one of the jurors mentioned seeing something about the State's requesting the death penalty, but no one else could recall the incident. The other nine jurors did not see the document, and did not recall its being read to them. The trial court concluded, "Because of the difficulty in people remembering as to what actually had occurred, the Court's of the opinion that whatever did occur, did not influence these jurors' opinion...." The court found the State carried its burden of establishing the extrinsic material was harmless. That finding is not clearly erroneous, and therefore, the trial court did not abuse its discretion in denying Taylor's motion to set aside the verdicts and for mistrial.

## IV. Sufficiency of the Evidence

Taylor asserts that his convictions for murder and attempted murder are not supported by sufficient evidence. He contends his murder conviction is unsupported because the evidence demonstrates his shooting of Dorthea was a result of "sudden heat" caused by provocation from Holly and his argument with Dorthea. He also argues that the State failed to prove specific intent as to the attempted murder of Holly and that Holly's testimony "was inherently incredible and unworthy of belief." In evaluating insufficient evidence claims, we do not reweigh evidence or assess the credibility of witnesses. Looking to the evidence and reasonable inferences drawn therefrom that support the verdict, we will affirm the conviction if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.*

It is the State's burden to negate the existence of sudden heat, once it has been injected into a case as a mitigating factor potentially reducing murder to manslaughter. *Isom v. State,* 651 N.E.2d 1151, 1152 (Ind.1995), *reh'g denied.* However, the "existence of sudden heat is a classic question of fact to be determined by the jury." *Fisher v. State,* 671 N.E.2d 119, 121 (Ind. 1996), *reh'g denied.* In this case, Taylor raised the sudden heat issue and the trial court instructed the jury on murder and voluntary manslaughter, including the requirements for sudden heat. The jury's conviction of Taylor for murder was a rejection of his sudden heat contention. Although Taylor disclaimed any intent to kill Dorthea, he had a loaded gun with him when he confronted her and he had threatened to kill her just hours earlier. The jury could reasonably have found Taylor guilty of murder beyond a reasonable doubt based on this evidence, as well as other evidence presented at the trial.

Taylor argues that the attempted murder conviction should be set aside because Holly's testimony is internally contradictory and no bullet was found near where Holly said he was when the shot was fired.

Inconsistencies in testimony go to its weight and credibility, the resolution of which is the jury's province. *Jordan,* 656 N.E.2d at 818. A reviewing court will overturn a conviction if "a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). However, "in essence, when faced with a claim of inherently improbable or incredibly dubious testimony, the court on review will reverse only when no reasonable person could believe it." *Davis v. State,* 658 N.E.2d 896, 897 (Ind.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1275, 134 L.Ed.2d 221 (1996). In this case, despite the asserted inconsistencies in Holly's testimony, the jury could have concluded beyond a reasonable doubt that Taylor was guilty of attempted murder.

 Taylor also contends the State failed to prove the intent to kill Holly. The intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Jones v. State,* 523 N.E.2d 750, 752 (Ind.1988). Thus, Taylor's shooting at Holly is sufficient evidence from which the jury could find beyond a reasonable doubt that Taylor intended to kill Holly.

### V. Sentencing

 Taylor appeals as manifestly unreasonable the trial court's enhancing his murder and attempted murder sentences to sixty and forty years, respectively, and imposing them as consecutive terms.[1] Enhanced or consecutive sentences are within the discretion of the trial court so long as it is clear which factors the court considered in determining the sentence. *Marshall v.*

*State,* 621 N.E.2d 308, 322 (Ind.1993). We will alter a sentence authorized by statute only if it is manifestly unreasonable in light of the nature of the offense and character of the offender. Ind. Appellate Rule 17(B).

 Taylor contends the trial court erroneously found that he had lain in wait for Dorthea and relied on that finding as an aggravator. He bases his contention on *Davis v. State,* 477 N.E.2d 889, 896–97 (Ind. 1985), a death penalty case. This court found there was not sufficient connection between Davis' concealment and one of his murders to support lying in wait as a statutory death penalty aggravator under Indiana Code § 35–50–2–9(b)(3) (1993). In this noncapital case, however, the trial court's sentencing order found as an aggravating circumstance "that the Defendant was, in fact, lying in wait for the victim on the night that she was killed, . . ." We need not resolve whether Taylor's conduct met the requirements of the lying in wait death penalty aggravator. Unlike the capital sentencing provisions, "the general felony sentencing statute's aggravating factors 'do not limit the matters that the court may consider in determining the sentence.'" *Bivins v. State,* 642 N.E.2d 928, 956 (Ind.1994), *reh'g denied, cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996) (quoting Ind.Code § 35–38–1–7.1(d)). And we have held specifically with respect to lying in wait that the trial court may consider it an aggravating circumstance. *Kingery v. State,* 659 N.E.2d 490, 497 (Ind.1995), *reh'g denied.*

Taylor also challenges the trial court's refusal to consider "sudden heat" as a mitigator and contends the court failed to give sufficient weight to other mitigating factors and to rehabilitation as a goal. In rejecting "sudden heat"[2] as a mitigating circumstance

---

1. The sentencing in this case is controlled by the law in effect in December 1992, when the crimes were committed. *Isaacs v. State,* 673 N.E.2d 757, 765 (Ind.1996). At that time, the presumptive sentence for murder was forty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind. Code § 35–50–2–3 (1988). The sentencing parameters for attempted murder, a Class A felony, currently are the same as they were in 1992: a presumptive sentence of thirty years, with not

more that twenty years added for aggravating circumstances or not more that ten years subtracted for mitigating circumstances. Ind. Code. § 35–50–2–4 (1993).

2. In his presentence argument to the trial court, Taylor referred to this mitigating circumstance as his "anger and rage" rather than "sudden heat." Similarly, the court's sentencing statement refers to it as anger and rage rather than sudden heat.

in this case, the trial court noted that the jury had also considered Taylor's rage and had determined it not to be a mitigating circumstance. The trial court found the absence of prior felony convictions to be a mitigating factor, but held that the aggravating factors outweighed the mitigating factors.

A trial court must consider evidence of mitigating circumstances presented by the defendant. Determining whether the circumstances are mitigating is within the court's discretion, however, and the judge is not obligated to explain why offered factors were not found to be mitigating. *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). Nor is the court obligated to weigh the defendant's evidence of mitigating circumstances as the defendant does. *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind.1986). Moreover, the trial court's noting that Taylor had no prior felony record indicates that it considered the goal of rehabilitation. *Smith v. State*, 474 N.E.2d 71, 74 (Ind.1985). All of these considerations are within the trial court's discretion in sentencing.

Taylor also asserts that the trial court failed to consider the mitigating circumstances listed in Indiana Code § 35–38–1–7.1(c)(3)–(7) [3] that he argues are supported in the record. The factual bases he cites to support the mitigators listed in paragraphs (3), (4), and (5), however, are the same as those he used to support his claim of "sudden heat." Thus, that evidence was considered and rejected as mitigating by the court. The trial court's consideration of Taylor's criminal history (item 6)—and specifically the absence of prior felony convictions—is shown by the sentencing statement's reference to Taylor's record, as well as his two prior convictions for misdemeanor battery on Dorthea. Tay-

lor's argument based on item (7) is limited to speculation that he would respond affirmatively to short-term imprisonment.

Finally, Taylor contends that the trial court's sentencing statement is too vague to support consecutive sentences of this length. If the court finds aggravating circumstances, it must include in the record a statement of its reasons for the sentence. IND.CODE § 35–38–1–3 (1993). The statement should identify all mitigating and aggravating circumstances the court has found significant, state the specific reason why each was determined to be mitigating or aggravating, and articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances. *Harris v. State*, 659 N.E.2d 522, 527–28 (Ind.1995). The trial court's sentencing statement complies with these requirements and supports Taylor's sentence as imposed.

### Conclusion

The jury convictions and sentence imposed by the trial court are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

3. Section 35–38–1–7.1(c)(3)–(7) (1993) provides:
 (c) The court may consider the following factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:
 . . . .
 (3) The victim of the crime induced or facilitated the offense.
 (4) There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense.
 (5) The person acted under strong provocation.
 (6) The person has no history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before commission of the crime.
 (7) The person is likely to respond affirmatively to probation or short term imprisonment.