**Wayne CURRY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9910–CR–732.**

Court of Appeals of Indiana.

Dec. 28, 2000.

Gregory Bowes, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Wayne Curry appeals his convictions after trial by jury of criminal deviate conduct,[1] attempted rape,[2] and burglary,[3] each as Class A felonies, and battery,[4] as a Class C felony. He raises three issues for our review we restate as:

1. Ind.Code § 35–42–4–2.

2. Ind.Code §§ 35–41–5–1, 35–42–4–1.

3. Ind.Code § 35–43–2–1.

4. Ind.Code § 35–42–2–1.

1. Whether Curry's convictions violate the Indiana constitutional prohibition against double jeopardy;

2. Whether the trial court erred in its instruction on reasonable doubt; and

3. Whether the evidence presented at trial was sufficient to support the jury's verdict.

We affirm in part and reverse and remand in part.

## FACTS & PROCEDURAL HISTORY

While asleep in her Indianapolis apartment in the early morning of August 8, 1999, Michelle Pounders was awakened by a large white male with brown hair and a tattoo on his forearm, who climbed on top of her and began to choke her. Rendered briefly unconscious by her attacker, Pounders regained consciousness only to be struck and dragged to the floor. Once on the floor, the attacker pinned Pounders' face down. He then proceeded to rape her anally and attempted to rape her vaginally. Before fleeing, the attacker put a pillow over Pounders' face and told her he would kill her if she tried to look up.

Pounders suffered numerous injuries. She was found bleeding from her ears and nose. Her body was badly bruised, particularly around her neck where she had been strangled. Her knees and elbows were bruised and swollen. She suffered petechia, a hemorrhaging of blood cells under the skin of her face. She also had an eight millimeter external hematoma near her vagina and anus.

Wayne Curry first fell under suspicion as the attacker after he was found by a police deputy one month after the rape walking around the apartment complex grounds at 3:30 a.m. When confronted by the deputy, Curry explained he was walking around the apartment complex to warn the public of the danger in the complex

due to the rapist. A computer fingerprint check revealed that Curry's prints matched those found on the victim's sliding glass door. He was not immediately brought in for questioning. Sometime later, in September or October 1998, the investigating officer again encountered Curry—this time in a group of onlookers who had gathered after another rape in the complex. Upon seeing and recognizing the officer, Curry stated, "Darrell, I didn't do this one, a black man did." (R. at 244.) Curry was finally brought in for questioning on October 27, 1998.

Curry was read his rights, and he agreed to be interviewed and to give a statement. During this interview, Curry made several incriminating admissions. He explained that his fingerprints were on Pounders' glass door because he had been invited inside. Additionally, when advised the police could possibly link Curry to the crime with DNA evidence, Curry explained he had consensual sex with Pounders. On March 29, 1999, Curry was tried by jury and convicted of all four counts.

## DISCUSSION & DECISION

### 1. *Double Jeopardy*

■ Curry was subjected to double jeopardy when he was charged with and convicted of criminal deviate conduct, attempted rape, and burglary as Class A felonies, as there was a reasonable possibility the jury based its guilty verdicts for the three counts on the same act by Curry.

Charging Curry with elevated counts of attempted rape, criminal deviate conduct, and burglary required the State to prove an additional element for each. For attempted rape and criminal deviate conduct as Class A felonies, the State was required to prove the attempt resulted in "serious bodily injury."[5] (R. at 24.) On the burglary count as a Class A felony, the State was

---

5. Ind.Code § 35–42–4–1(b)(3), 35–42–4–2(b)(3). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–25.

required to prove either "bodily injury" or "serious bodily injury"[6] (*Id.*)

■ Our supreme court recently explained the double jeopardy protection provided under the Indiana Constitution. In *Richardson v. State*, 717 N.E.2d 32, 49–·50 (Ind.1999), the court explained two or more offenses are the "same offense" in violation of the Indiana Constitution's double jeopardy protections where, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.* Where, as here, a criminal statute provides for the elevation of a charge to a more serious crime based upon an additional element, the *Richardson* double jeopardy analysis applies. *See Chapman v. State*, 719 N.E.2d 1232, 1234 (Ind.1999), *reh'g denied* (reducing an elevated sentence when the same force used to convict of murder was used to elevate the robbery conviction).

■ Under the "actual evidence" test, the test applicable here, we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Richardson*, 717 N.E.2d at 53. To prove a double jeopardy violation under the "actual evidence" test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The "reasonable possibility" standard permits convictions of multiple offenses committed as part of a protracted criminal episode provided the case is prosecuted in a manner that in-

sures the same evidence is not used to support multiple verdicts. *Id.* at 53 n. 46.

Curry's case was not so prosecuted. The State's charging informations for the attempted rape and sexual deviate conduct counts both refer to Curry's actions "while using deadly force" (R. at 23) and while Pounders was compelled to submit "by force or the imminent threat of force." (*Id.*) The burglary information alleges Curry broke and entered Pounders' dwelling with the intent to engage in sexual intercourse with her while she was "compelled to submit by force or the imminent threat of force." (*Id.* at 24.) Only the information for the battery count identifies the act that resulted in bodily injury to Pounders: "strangl[ing] her around the neck, which resulted in serious bodily injury ..., that is: unconsciousness." (*Id.*)

■ Pounders sustained multiple injuries during the beating she suffered after she regained consciousness, but the beating that apparently supported the enhancement of the charges of criminal deviate conduct, attempted rape, and burglary consisted of a single episode of brutality[7] and cannot be classified as separate and distinct incidents. Furthermore, the State presented no evidence at trial that would have indicated to the jury that the "force" elements of the three charges were to be satisfied by distinct acts of violence. Rather, the State's case and Curry's defense were both premised almost entirely upon the identification of Curry as the perpetrator. There was a reasonable possibility the jury used the same facts to establish the essential elements of force or injury that were used to enhance all three charges to Class A felonies and Curry was therefore subjected to double jeopardy. As a result, we affirm Curry's convictions

---

6. Ind.Code § 35–43–2–1. Bodily injury is defined as "any impairment of physical condition, including physical pain." Ind.Code § 35–41–1–4.

7. Curry's double jeopardy protections are not implicated by the battery conviction. Curry strangled Pounders to the point of uncon-

sciousness, and the subsequent beating did not take place until after she had regained consciousness. This act was clearly separated from the beating by the State's charging information and by Pounders' testimony at trial.

of battery as a Class C felony and attempted rape as a Class A felony. We reduce his convictions of burglary and criminal deviate conduct to Class B felonies[8] and remand to the trial court.

### 2. Jury Instructions

When deciding whether a particular jury instruction was proper, we consider 1) whether the instruction correctly stated the law; 2) whether there was evidence in the record to support giving the instruction; and 3) whether the substance of the instruction was covered by other instructions. *Fields v. State*, 679 N.E.2d 1315, 1322 (Ind.1997). Instructing the jury lies within the sound discretion of the trial court, and we will disturb a jury's verdict and reverse a judgment only if the trial court has abused this discretion. *Edgecomb v. State*, 673 N.E.2d 1185, 1186 (Ind.1996).

Curry first argues the court's instruction on reasonable doubt was improper, despite being a correct statement of law expressly approved by our supreme court in *Winegeart v. State*, 665 N.E.2d 893 (Ind.1996). He asks that we "reexamine the *Winegeart* instruction with the benefit of analysis derived from other jurisdictions that have been confronted with objections or criticisms of the instruction on appeal." (Br. of Appellant at 11.) We decline Curry's invitation, as our supreme court recently reaffirmed the *Winegeart* instruction in *Wright v. State*, 730 N.E.2d 713, 716 (Ind.2000). In light of this precedent, we do not find error in the trial court's reasonable doubt instruction.[9]

Next Curry argues the court's instruction on victim testimony was improper. The trial court instructed:

It is not essential to a conviction that the testimony of the victim be corroborated by other evidence. It is sufficient if, from all the evidence, you believe beyond a reasonable doubt that the crimes

8. We do so pursuant to *Ritchie v. State*, 243 Ind. 614, 618, 189 N.E.2d 575, 576 (1963). There our supreme court held that when, under the evidence as found by the court or jury, the accused should have been adjudged guilty of a lesser included offense, an appellate court may modify the judgment by reducing the conviction to that of the lesser included offense and thus avoid a new trial. *See also Nuerge v. State*, 677 N.E.2d 1043, 1047 (Ind.Ct.App.1997). The court noted in *Ritchie* the general rule that a "reviewing court, in a proper case, may modify a judgment of conviction below and affirm it as a conviction of a lesser degree of the offense charged, or of a lesser crime included therein, where the errors do not affect the conviction of the lesser offense." 243 Ind. at 619, 189 N.E.2d at 577, quoting 5 Am.Jur.2d *Appeal and Error* § 938.

The *Ritchie* court found that its discretion to so modify sentences was premised upon Burns' Ann. St. § 9–2321, which provided in pertinent part that "[o]n appeal, the court may reverse, modify, or affirm the judgment appealed from, and may, if necessary or proper, order a new trial. In any case, the cause must be at once remanded to the trial court, with proper instructions...." Similar provisions are now included in Ind. Appellate Rule 15(N). However, the *Ritchie* court noted that "[t]here are a number of states without any constitutional or statutory authority specifically authorizing modification or alteration of judgments on appeal in criminal cases; yet the high courts of those states have found that they have inherent discretion to do so." 243 Ind. at 622, 189 N.E.2d at 578.

We have followed the *Ritchie* approach in a number of subsequent decisions. *See, e.g., Anderson v. State*, 674 N.E.2d 184, 185–86 (Ind.Ct.App.1996), where the defendant was found guilty of aggravated battery as a lesser included offense of attempted murder. On appeal, the aggravated battery conviction was vacated, and the case was remanded "with instructions to enter judgment and sentence on the offense of battery with a deadly weapon, a class C felony, a lesser included offense of attempted murder." *And see Lane v. State*, 175 Ind.App. 543, 548, 372 N.E.2d 1223, 1225–27 (1978); *Nunn v. State*, 601 N.E.2d 334, 339–40 (Ind.1992); *Johnson v. State*, 594 N.E.2d 817, 820–21 (Ind.Ct.App.1992); *Isom v. State*, 589 N.E.2d 245, 248 (Ind.Ct.App. 1992); and *Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind.1987).

9. Curry additionally argues it was error for the trial court to reject his tendered reasonable doubt instruction as it too was a correct statement of law. As the substance of Curry's tendered instruction was sufficiently covered by the instruction actually given the jury, we do not find error.

charged were committed by the defendant.

(R. at 119.) This instruction is a correct statement of law, *Madden v. State*, 549 N.E.2d 1030 (Ind.1990), and Curry acknowledges as much. (Br. of Appellant at 12.) Curry, however, posits the evidence did not support the use of this instruction and its use "unfairly highlighted and vouched for the testimony of the victim." (*Id.*) We disagree.

■ When considering whether the evidence supports an instruction, we examine the jury instructions as a whole and in reference to each other. An error in a single instruction will not require reversal unless the entire charge misleads the jury as to the law in the case. *Edgecomb*, 673 N.E.2d at 1186. In this case, the fact that the victim's testimony was corroborated by Curry's admissions and other physical evidence does not make the instruction erroneous. The jury was instructed how to use witness testimony, including the victim's, and that it could not convict absent evidence beyond a reasonable doubt. We find no error.

### 3. *Sufficiency of the Evidence*

■ When reviewing the sufficiency of evidence presented to support conviction, we neither reweigh the evidence nor judge the credibility of the witnesses. *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind. 1994); *Byrd v. State*, 707 N.E.2d 308, 312 (Ind.Ct.App.1999). Rather, we look to the evidence that supports the verdict and all reasonable inferences which can be drawn therefrom. *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind.1997); *Chissell v. State*, 705 N.E.2d 501, 505 (Ind.Ct.App.1999),

*trans. denied*, 714 N.E.2d 170 (Ind.1999). We will affirm a conviction if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Taylor*, 681 N.E.2d at 1110.

Curry does not dispute there was "overwhelming evidence that Ms. Pounders suffered a horrifying attack," (Br. of Appellant at 17), and challenges only the sufficiency of evidence linking him to the crimes. There was ample evidence to support the finding he was the attacker.

■ Evidence that Curry was the attacker came from three sources—physical evidence, admissions, and victim identification. Curry's fingerprints were found on the sliding glass door to the victim's apartment, thereby placing him at the scene of the crime. He attempted to explain this to the investigating detective. During his questioning, the investigating detective informed Curry of his intention to match Curry's DNA and fingerprints with any found at the crime scene. The detective asked Curry if he wanted to tell him anything before they took blood, hair, and saliva samples from him. The detective also asked "Do you think they're going to believe that you don't know how your fingerprints and your DNA got in that apartment?" (R. at 324.) To this, Curry responded "I know exactly how my fingerprints got in that apartment .... [b]ecause I was welcomed into the home." (*Id.*)

Curry went on to admit having consensual intercourse with the victim.[10] He stated "Yeah, I had sex with her, but not forcefully." (*Id.*) When asked if they had anal sex, he told the detective "Yeah, she

---

**10.** Curry argues he was only admitting to having consensual sex with "some woman who resided at the same apartment complex as Ms. Pounders," (Br. of Appellant at 17), and not specifically the victim. Despite this argument, we believe a more reasonable inference to be drawn from his admissions, when viewed in the light most favorable to the judgment, is that Curry was admitting to having had consensual sexual intercourse with

the victim. Curry was being questioned about the crime against the victim and was offering an explanation why his fingerprints and potentially his DNA might be found in the victim's apartment. Additionally, the detective through whom these admissions were presented was cross-examined on this specific point. Therefore, Curry is merely offering us an opportunity to reweigh evidence—something we do not do.

told me she'd like that." (*Id.* at 329.) When asked about whether she liked rough sex, Curry responded "The way she acted, she did 'cause she's weird." (*Id.*)

Beyond the fingerprints on the door of the victim's apartment and Curry's admissions, the victim was able to give a general description of her assailant. While the description was somewhat vague and she admitted to not being able to identify Curry as her assailant, her general description was not inconsistent with Curry's appearance—including a tattoo on his forearm. This description in connection with the physical evidence and admissions provides sufficient evidence to permit the jury to have concluded Curry was the attacker.

## CONCLUSION

We affirm Curry's convictions of battery as a Class C felony and attempted rape as a Class A felony and reduce his convictions of burglary and criminal deviate conduct to Class B felonies. We remand to the trial court for proceedings consistent with this opinion.

BROOK, J., concurs.

DARDEN, J., concurring in part and dissenting in part with opinion.

DARDEN, Judge, concurring in part and dissenting in part.

I fully concur with the majority as to Issues II and III of the opinion. However, as to Issue I, I would respectfully affirm in part, dissent in part and, accordingly, remand to the trial court.

Referring to Issue I and as to Count I of the charging information, I fully concur with the majority to affirm Curry's conviction for the crime of attempted rape as a class A felony. As to Count II of the charging information, I would also concur with the majority to reduce Curry's conviction for criminal deviate conduct to a class B felony. As to Count III of the information, I would dissent with the majority which ruled to reduce Curry's conviction

for burglary as a class A felony to burglary as a class B felony; and, instead, I would dismiss the burglary charge in its entirety. Lastly, as to Count IV of the information, I would dissent from the majority and would rule to vacate defendant's conviction for battery as a class C felony.

My reading of the facts and interpretation thereof differs somewhat from that of the majority. The evidence reveals that while Pounders was asleep on her bed, which consisted of a box spring and a mattress on the floor, Curry jumped on her back and placed his forearm around her neck. The parties struggled on the bed and the more Pounders struggled, the more Curry tightened his grip around her neck. During the struggle and as Pounders moved along her bed, she fell off onto the floor. Still in the midst of the struggle, she was pulled back onto the bed and passed out momentarily. She recalls being pushed off the opposite side of the bed onto the floor where she was pinned on her stomach and sexually assaulted.

Her exact testimony regarding the attack was as follows:

> I remember waking up to somebody had jumped on my back and had put a forearm around my neck like he was choking me. . . . I tried to get up to struggle to try to get loose, but it seemed like every time I struggled, it would get tighter around my neck. . . . I was moving along my bed and I had somehow fallen to the right side of my bed and I remember getting pulled back up to my bed and at that time I had passed out. . . .

(R. 172–73).

> I passed out and when I woke up, I was getting pushed off of my bed onto the other side of the floor. . . . The person had laid me on my stomach on the other side of the bed that I was laying on when I was sleeping and he had me pinned—I don't know how—he had me pinned where I couldn't see anything. My hair was flipped to my face where I couldn't see anything. And he pulled my shorts down to my knees or to my

ankles, I don't remember how far, and he had started to rape me anally. . . .

(R. 174).

He had *tried to go into my vagina* [the attempted rape], but it didn't go in. And he *had gone into my anus and he was in there for a little bit* [the criminal deviate sexual conduct], I don't know how long it was, and *he had stopped and he had gone back into my vagina for a couple of times* [attempted rape], and then he went out.

(R. 175) (emphasis added).

Additional state's evidence was presented by Suzanne Young, a nurse practitioner, who treated Pounders shortly after the attack and testified to the following:

Question: Okay. And did she give you details of the actual sexual assault?

Young: She stated that there was vaginal penetration and that there was anal penetration.

Question: Okay. And did she say whether or not either of those caused her any pain or any discomfort?

Young: Well, the vaginal, as I recall, was brief. She didn't think that there was ejaculation in the vagina. The anal penetration was painful.

Question: And after she gave you the details of the assault, then did you actually move her into the examining room to actually perform the examination?

Young: Yes.

(R. 364).

Question: And the results of your examination as far as the pelvic examination, what were those?

Young: The pelvic examination, abdominally she was normal. She was a little tender, but it didn't appear that there was any internal damage. Externally,

she had about an eight millimeter hematoma, which is a little blood-filled soft tissue area, by the anus, which—I don't know if I'm supposed to say that—which would be consistent with blunt force trauma to that area.

Question: Okay. And any other injuries that you noted in her pelvic examination?

Young: The only other interesting finding was that there was fecal debris not only around the anus, but up into the lower area of the vagina.

(R. 366–67).

I believe that the "actual evidence test" as outlined in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999) provides us with all the guidance needed to resolve this case. When considering a double jeopardy claim under the "actual evidence test," "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Id.* at 52. The two challenged offense are the "same offense" when the defendant shows "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

On the other hand, Curry's convictions for attempted rape, as a class A felony, and criminal deviate conduct, as a class A felony, do not violate Indiana's double jeopardy clause. The actual evidence presented at trial establishes each offense by separate and distinct facts. For example, the essential elements of attempted rape as charged are as follows: (1) Curry; (2) knowingly or intentionally; (3) while using deadly force;[11] (4) took a substantial step

11. "'Deadly force' means force that creates a substantial risk of serious bodily injury." Ind.Code 35–41–1–7. In *Smith v. State*, 455 N.E.2d 606 (Ind.1983), the victim was thrown down on her back, her assailant put his hand over her mouth and nose, cutting off her ability to breathe and almost rendered her

unconscious before she was sexually attacked. In *Calbert v. State*, 275 Ind. 595, 418 N.E.2d 1158 (1981), the victim was grabbed, knocked to the floor, sat upon and repeatedly slapped, bitten and threatened by her assailant before being sexually assaulted. In both cases, our supreme court held that the assailants had

toward having sexual intercourse with Pounders; (5) when Pounders was compelled to submit by force or imminent threat of force. IND.CODE § 35–41–5–1; 35–35–42–4–1. The essential elements of criminal deviate conduct as charged are: (1) Curry; (2) knowingly or intentionally; (3) while using deadly force; (4) caused Pounders to perform or submit to deviate sexual conduct; (5) when Pounders was compelled by such force or imminent threat of such force. IND.CODE § 35–42–4–2.

These offenses are distinguished by the elements requiring "sexual intercourse" and "deviate sexual conduct." " 'Sexual intercourse' means an act that includes any penetration of the female sex organ by the male sex organ." IND.CODE § 35–41–1–26. " 'Deviate sexual conduct' means an act involving: (1) a sex organ of one person and the mouth or anus of another person;...." IND.CODE § 35–41–1–9. The statutes show that attempted rape cannot occur without taking a substantial step towards penetration of the female sex organ by the male sex organ, and criminal deviate conduct cannot occur without the performance of an act involving a sex organ and another's mouth or anus. *See Riggs v. State*, 508 N.E.2d 1271 (Ind.1987) ("A defendant may be charged with multiple acts of rape and deviate sexual conduct committed upon the same victim when each act requires proof of a specific fact which the others do not.") Pounders testified that Curry attempted both anal and vaginal penetration. However, anal penetration is not "sexual intercourse" under Indiana's rape statute, and vaginal penetration is not "deviate sexual conduct" under the criminal deviate conduct statute. Therefore, other than the use of deadly force, no reasonable possibility exists that the same evidentiary facts used by the jury to establish the essential elements of attempted rape could also have been used

to establish the essential elements of criminal deviate conduct. Therefore, Curry's conviction for attempted rape as a class A felony should be affirmed and a conviction for criminal deviate sexual conduct as ' a class B felony should be imposed.

There is no evidence or serious dispute that the objective of Curry breaking and entering was to commit the sexual attack on Pounders. In Count III of the information, the state charged Curry with committing burglary as a class A felony due to Pounders sustaining bodily injury.[12] I recognize that the basis for the enhancement of the burglary charge to a class A felony was based on Curry's infliction of bodily injury and that the enhancements for attempted rape and criminal deviate conduct were based upon Curry's use of deadly force. However, the actual evidence in this case shows that all the enhancements are based upon the same injurious consequence: the choking of Pounders causing bruising and momentary unconsciousness during the tussle.

I am further puzzled that Curry could commit such a brutal attack upon Pounders by the use of deadly force, which created a substantial risk of serious ,bodily injury, without also having committed bodily injury. All the injuries sustained by Pounders occurred during the struggle on the bed. There is no evidence of a separate and distinct battery resulting in injury. In essence, and pursuant to *Richardson* and the application of the "actual evidence test," I believe that the "bodily injury" sustained by Pounders was subsumed into or is a lesser included injury resulting from the same injury inflicted by Curry's use of "deadly force." *Russell v. State*, 711 N.E.2d 545 (Ind.Ct.App.1999). Because the enhancement of the crime of burglary to a class A felony was based upon the same injurious consequences that caused the enhancement of the

used "deadly force" to effectuate their felonious intent.

**12.** " 'Bodily injury' means any impairment of physical condition, including physical pain." Ind.Code 35–41–1–4.

crimes of attempted rape as a class A felony and criminal deviate sexual conduct as a class A felony, I would vacate Curry's conviction for burglary. There is a reasonable possibility that the same evidentiary facts used by the fact finder to establish the essential elements of the crimes of attempted rape and criminal deviate sexual conduct, both enhanced to class A felonies, may also have been used to establish the essential elements of another challenged offense, i.e., burglary, as a class A felony. Curry was subject to multiple convictions based upon the same injurious behavior as outlined and charged in Counts I, II and III of the information. *See also, Campbell v. State*, 622 N.E.2d 495 (Ind.1993).

Finally, based upon the facts in this case, I further believe that Curry's conviction for battery as a class C felony as charged in Count IV of the information should be vacated. To convict Curry of battery as a class C felony, the state was required to prove the following: (1) Curry; (2) knowingly or intentionally; (3) touched Pounders in a rude, insolent or angry manner; (4) which resulted in serious bodily injury[13] to Pounders. Ind.Code § 35–42–2–1.

It is undisputed that Pounders received, by the use of deadly force, multiple injuries to her neck, knees, eyes, ears, and sustained bruising during the attack. *Smith v. State*, 455 N.E.2d 606 (Ind.1983). However, I am unable to ascertain where in the record the evidence supports more than a single episode of brutality to accomplish the sexual assault upon Pounders. After Pounders was choked and passed out momentarily, she was pinned to the floor and sexually assaulted. There is no evidence of a separate and distinct battery after Pounders regained consciousness. It is obvious to me that the same evidence used in support of the battery causing serious bodily injury is the same deadly force evidence that was used to enhance the charges of burglary, attempted rape, and criminal deviate conduct, all to class A felonies. The actual evidence in this case also demonstrated that there was a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of battery were also used to establish the essential elements of the enhanced charges for burglary, attempted rape, and criminal deviate conduct, all as class A felonies. Therefore, the battery conviction should be vacated.

## CONCLUSION

Curry's conviction for attempted rape, as a class A felony, should be affirmed. Curry's conviction for criminal sexual deviate conduct should also be affirmed; however, conviction should be only entered as a class B felony. Both of Curry's convictions for burglary, as a class A felony, and battery, as a class C felony should be vacated. I would hereby remand the case to the trial court for resentencing in accordance with this opinion.

---

**13.** " 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes:

    . . . . .

  (2) unconsciousness;

  (3) extreme pain; . . ."
Ind.Code 35–41–1–25.