George Neal JACKSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 82S00–9806–CR–352.

Supreme Court of Indiana.

May 3, 1999.

Dennis A. Vowels, Evansville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury found George Neal Jackson guilty of murder, and he was sentenced to sixty years imprisonment. In this direct appeal he argues that he should have been convicted of voluntary manslaughter because the evidence was insufficient to convict him of murder.

We affirm the trial court.

### Factual and Procedural Background

On August 18, 1997, Jennifer Strueh was moving into an apartment in the same building where Jackson lived. James Brian Kneer, the father of Strueh's child, and Kneer's uncle, Franklin Howell, were helping with the move. Strueh's apartment was located on the ground floor, and Jackson lived in an apartment on the second floor. According to Strueh, Jackson had been drinking, was obnoxious, and made sexually suggestive comments to her. Strueh reported Jackson's remarks to Howell, who passed them on to Kneer.

While inside Strueh's apartment later in the evening, Kneer and Howell heard James Hancock, an elderly and legally blind first floor neighbor of Strueh's, repeatedly telling Jackson, who was outside Hancock's door, "to go upstairs and leave him alone."[1] Kneer and Howell went outside "to make sure [Hancock] was okay[.]" When Howell joined Hancock in asking Jackson to go upstairs, Jackson refused and displayed a pistol and a knife tucked in his pants. According to Kneer, Jackson first asked Howell "[h]ow would you like me to put a cap in your ass?," then stated that he was "gonna grab [his] gun," and "acted like he was going for it two or three times" before finally drawing the pistol. Howell and Kneer succeeded in disarming Jackson and after a brief struggle Jackson retreated up the stairs.

Kneer remained in front of Hancock's apartment while Howell walked toward the garage to resume moving items into Strueh's apartment. As Howell returned from the

---

1. Hancock testified that he was standing outside his apartment talking to Howell and Kneer when Jackson first approached.

garage, Jackson leaned over the balcony and pointed the barrel of a shotgun in Kneer's face. Jackson then turned the gun on Howell and, with the gun no farther than two feet from Howell's head, pulled the trigger inflicting a fatal wound. Immediately after firing the shotgun, Jackson said "I told you I would put a cap in your ass." Jackson then threatened to "come down there and put another one in you" and walked toward the staircase. Kneer told Jackson to stop, but Jackson instead again raised the shotgun. Kneer then fired the handgun in Jackson's direction, but, according to Kneer, intentionally missed Jackson. Jackson was arrested when the police arrived seconds later.

The foregoing is largely Kneer's account. Its essential points were corroborated by the testimony of several other witnesses. Kristin Cardin shared an upstairs apartment with her boyfriend Todd Hochstetler. She saw and heard the initial verbal exchange, but after Jackson pulled the handgun and the initial struggle began, Cardin went into her apartment to call 911. Hochstetler then saw Howell punch Jackson two or three times, but he also returned to the apartment believing the fight between Howell and Jackson had ended. He soon saw Jackson leaving his apartment with a shotgun in hand. Hochstetler shut the door to his apartment and remained inside where he heard the shots fired. Cardin also heard the shots during the 911 call.

Dan and Vicky Bealmear, who resided in another upstairs apartment, also heard the verbal exchange between Jackson and Howell, and saw Jackson as he was walking up the steps. They observed Jackson enter his apartment alone, heard him loading a gun, then saw him leave his apartment with a shotgun. Jackson politely said "excuse me" as he passed the Bealmears on the balcony, then proceeded a few steps where he stopped, held the gun over the railing, and shot Howell.[2]

Finally, Heath Garrett was at his girlfriend's first floor apartment. He went outside to smoke a cigarette after hearing the commotion. He observed Jackson leave his apartment with the shotgun, walk a short distance, reach over the balcony, mutter "a cussword," and then shoot Howell.

Jackson was charged with murder. The jury was also instructed on the lesser included offense of voluntary manslaughter, but found Jackson guilty of murder.

## I. Sufficiency of the Evidence

Indiana's murder statute provides that "[a] person who ... knowingly or intentionally kills another human being ... commits murder[.]" IND.CODE § 35–42–1–1 (1998). However, "[a] person who knowingly or intentionally ... kills another human being ... while acting under sudden heat commits voluntary manslaughter[.]" IND.CODE § 35–42–1–3(a) (1998).[3] "Sudden heat requires sufficient provocation to engender ... passion which is demonstrated by anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Horan v. State,* 682 N.E.2d 502, 507 (Ind.1997) (internal quotation marks omitted). Sudden heat is a mitigating factor that reduces otherwise murderous conduct to voluntary manslaughter, *see* IND.CODE § 35–42–1–3(b) (1998), but is not an element of voluntary manslaughter. *See Horan,* 682 N.E.2d at 507. Although the State has the burden of negating the existence of sudden heat beyond a reasonable doubt, in order to inject that issue at all the defendant must point to some evidence supporting sudden heat whether this evidence be in the State's case or the defendant's own. *Bradford v. State,* 675 N.E.2d 296, 300 (Ind. 1996); *see also Clark v. State,* 668 N.E.2d 1206, 1209 (Ind.1996); *Gregory v. State,* 540 N.E.2d 585, 593 (Ind.1989); *McBroom v. State,* 530 N.E.2d 725, 728 (Ind.1988); *Raub*

---

**2.** The Bealmears testified that Jackson said "[h]ere's that shotgun, punk," prior to firing the shotgun.

**3.** Both the murder and voluntary manslaughter statutes have been amended since the time of

Jackson's crime. Because those amendments relate only to the imposition of liability for the killing of a fetus that has attained viability, which is not at issue in this case, we cite to the current Code.

*v. State*, 517 N.E.2d 80, 82 (Ind.1987); *Smith v. State*, 502 N.E.2d 485, 489 (Ind.1987).[4]

▬▬ Jackson contends that he was sufficiently provoked by Howell and that there was inadequate time to engage in "cool reflection" before the firing of the fatal shot. He points to the following four factors in support of his claim:

1) In the initial struggle, Howell struck Jackson in the face two to four times and knocked Jackson to the ground.

2) Howell was yelling and swearing at Jackson.

3) Howell provoked Jackson by calling him a pussy.

4) The interval between Jackson's being knocked to the ground by Howell and firing the fatal shot at Howell was a minute or less.

In evaluating Jackson's insufficiency claim, we do not reweigh evidence or assess the credibility of witnesses. We look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind.1997).

▬▬ "Existence of sudden heat is a classic question of fact to be determined by the jury." *Fisher v. State*, 671 N.E.2d 119, 121 (Ind.1996) (citing *Bane v. State*, 587 N.E.2d 97, 100 (Ind.1992)). The trial court properly instructed the jury on the offenses of murder and voluntary manslaughter, including the requirements for sudden heat. The jury's conviction of Jackson for murder was a rejection of his sudden heat contention, *see Taylor*, 681 N.E.2d at 1110, and there is ample

evidence in the record to support the jury's verdict. Howell first approached Jackson, who had been drinking, while Jackson was arguing with Hancock. Howell joined Hancock in requesting that Jackson go upstairs. Jackson then displayed his gun and knife and threatened to "put a cap in [Howell's] ass." After Jackson pulled a "cocked" gun, Kneer and Howell disarmed him. Howell then pushed and punched Jackson, who was still armed with a knife. Jackson retreated to his upstairs apartment where he loaded a shotgun, walked past his neighbors on the balcony, and shot Howell. Immediately after the shooting, Jackson announced that he had fulfilled his earlier promise to "put a cap in [Howell's] ass."

▬▬ The jury may very well have concluded that Howell did nothing to provoke Jackson. Insulting or taunting words alone are not sufficient provocation to reduce murder to manslaughter. *Potts v. State*, 594 N.E.2d 438, 439 (Ind.1992) (citing *Perigo v. State*, 541 N.E.2d 936, 939 (Ind.1989)).[5] At the beginning of their confrontation, Howell merely joined Hancock in requesting Jackson to go upstairs. It was only after Jackson revealed that he had a gun and knife and threatened Howell that any type of physical confrontation occurred. Howell's subsequent pushing or punching of Jackson was not itself provocation, but rather a response to Jackson's threat on his life. Moreover, Jackson did not immediately shoot Howell after the physical struggle. Rather, he walked to his second floor apartment where he took the time to load a shotgun and walk past neighbors before shooting Howell. Under these circumstances, the jury could have concluded that this was sufficient time for "cool reflection." Finally, Jackson's words after the

---

4. The jury was properly instructed that "the State bears the burden of negating the presence of sudden heat beyond a reasonable doubt." However, a few of our prior opinions incorrectly state that the defendant must show or prove the existence of sudden heat. *See, e.g., Storey v. State*, 552 N.E.2d 477, 480 (Ind.1990); *McCann v. State*, 466 N.E.2d 421, 424 (Ind.1984); *see also Matheney v. State*, 583 N.E.2d 1202, 1205 (Ind. 1992) (citing *Storey* ). To the extent that these cases improperly place the burden of showing or proving sudden heat on the defendant, and to that extent only, these cases are overruled.

5. The cases cited, and many others, categorically state that words alone are not sufficient provocation. However, the character and likely effect of the words used may make a difference in some cases. *Cf. Perigo*, 541 N.E.2d at 941–42 (Dickson, J., concurring and dissenting) (expressing the view that the discovery of infidelity or other "qualifying inflammatory conduct," whether visually or verbally, may serve as a basis for a defense claim of provocation). This case presents no issue on that point.

**330**

shooting also support the inference that Jackson was carrying out his earlier desire to "put a cap in [Howell's] ass," which existed prior to the physical altercation between the men. In sum, these facts are sufficient to support the jury's conclusion that Jackson was not acting in "sudden heat" when he shot Howell.

■ As a final point, Jackson contends that his case presents an issue of "inherently improbable testimony ... of incredible dubiosity." *See Jenkins v. State*, 686 N.E.2d 1278, 1278 (Ind.1997) (internal quotation marks and citations omitted). The "incredible dubiosity rule" allows a reviewing court to reverse the trial court when "a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). Jackson asserts that Kneer's testimony falls under this doctrine. We disagree.

■ Kneer was not the only person who saw Jackson shoot Howell. Dan and Vicky Bealmear and Heath Garrett also witnessed the shooting. Kristin Cardin and Todd Hochstetler heard the verbal exchange between Howell and Jackson, and Hochstetler saw Jackson with a shotgun seconds before both heard shots fired. Kneer's testimony was in no way contradictory, equivocal, or the result of coercion. It is corroborated by a wealth of other evidence.

### Conclusion

George Neal Jackson's conviction for murder is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.