# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DAVID A. COLLINS**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL J. GRIFFIN,                )<br>                                                     )<br>        Appellant-Defendant,          )<br>                                                     )<br>            vs.                              )<br>                                                     )<br>STATE OF INDIANA,                 )<br>                                                     )<br>        Appellee-Plaintiff.              ) | No. 53A05-1106-CR-288 |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Teresa D. Harper, Judge
Cause No. 53C09-0912-MR-1101

**March 21, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Michael J. Griffin ("Griffin") appeals his conviction and sentence for Murder, a felony.[1]  We affirm the conviction but revise the sentence to forty-five years.

## Issues

Griffin presents four issues for our review:

I.     Whether the State failed to establish that Griffin did not act in sudden heat, a factor which mitigates murder to voluntary manslaughter;

II.    Whether the trial court abused its discretion by admitting improper impeachment testimony;

III.   Whether Griffin was entitled to an instruction on reckless homicide; and

IV.    Whether his advisory sentence is inappropriate.

## Facts and Procedural History

On December 28, 2009, the Bloomington Police Department received a 9-1-1 call reporting that Don Belton ("Belton") was lying face down on his kitchen floor and was not breathing.  The ensuing investigation revealed that Belton had been stabbed to death.  That same day, Jessa Greiwe ("Greiwe") gave a statement to Batesville Police Department officers implicating her boyfriend, Griffin, in the killing.

When apprehended, Griffin admitted killing Belton, but alleged that it was in response to events that occurred after a recent Christmas party.  According to Griffin and Greiwe, Belton had invited himself to be their guest at the party, had mixed and served drinks there, and early in the evening had begun to insist that he was too high or drunk to leave.  Griffin

---

[1] Ind. Code § 35-50-2-3.

and Greiwe had drunk to extreme intoxication,[2] and the couple alleged that Belton had taken advantage of the situation by engaging in uninvited oral sex and anal intercourse with Griffin. Griffin claimed that he had gone to Belton's house two days later to discuss the encounter; however, Belton had treated Griffin's concerns with disdain, responded that Griffin must have enjoyed the sexual encounter, and pushed Griffin. Ultimately, Griffin inflicted twenty-one stab wounds on Belton and sliced Belton's throat.

On December 29, 2009, Griffin was charged with murder. At the jury trial, Greiwe and Griffin each testified that Belton had sexually assaulted Griffin two days before the killing. The jury was instructed on voluntary manslaughter as well as murder; however, the trial court refused Griffin's request for an instruction on reckless homicide. At the conclusion of the trial, Griffin was found guilty of murder. He was sentenced to fifty-five years imprisonment, with five years suspended to probation. This appeal ensued.

**Discussion and Decision**

I. Sudden Heat

Griffin contends that the State failed to negate the presence of sudden heat, which, if found by the jury, would have reduced his murder conviction to voluntary manslaughter.

Indiana's voluntary manslaughter statute provides:

(a)     A person who knowingly or intentionally:
        (1)     kills another human being; or
        (2)     kills a fetus that has attained viability (as defined in IC 16-18-2-365);

---

[2] Griffin also admitted that he had smoked marijuana that day.

3

while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.

(b)     The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Ind. Code § 35-42-1-3. "Sudden heat" is characterized as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Dearman v. State, 743 N.E.2d 757, 760 (Ind. 2001). Voluntary manslaughter involves an "impetus to kill" which "suddenly overwhelms" the actor. Stevens v. State, 691 N.E.2d 412, 427 (Ind. 1997). Use of insulting or taunting words does not alone provide sufficient provocation for reducing murder to manslaughter. Potts v. State, 594 N.E.2d 438, 439 (Ind. 1992) (citing Perigo v. State, 541 N.E.2d 936, 939 (Ind. 1989)).

To obtain a conviction for murder, the State is under no obligation to negate the presence of sudden heat, because there is no implied element of the absence of sudden heat in the crime of murder. Earl v. State, 715 N.E.2d 1265, 1267 (Ind. 1999). However, once a defendant places sudden heat into issue, the State bears the burden of negating the presence of sudden heat beyond a reasonable doubt. Id. The State may meet this burden by rebutting the defendant's evidence or by affirmatively showing in the State's case-in-chief that the defendant was not acting in sudden heat when the killing occurred. Id.

In evaluating a claim of insufficiency, we do not reweigh evidence or assess the credibility of witnesses. Jackson v. State, 709 N.E.2d 326, 329 (Ind. 1999). We look to the

4

evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. "Existence of sudden heat is a classic question of fact to be determined by the jury." Id.

Here, the State elicited testimony that Griffin went to Belton's home two days after their last encounter. Greiwe had offered to accompany Griffin on his errands but he had expressed a desire to go alone. Griffin had a knife on his person when he entered Belton's residence. This is sufficient evidence from which the jury could conclude that Griffin did not act under a "sudden impetus to kill" arising in response to a contemporaneous event. See Stevens, 691 N.E.2d at 427. Griffin's request that we focus upon his allegations that Belton claimed "Griffin did not resist and must have enjoyed it" and that Belton pushed him essentially amounts to an invitation to reweigh the evidence. (Tr. 264.) We will not do so. The State produced sufficient evidence to negate Griffin's claim that he was acting in sudden heat when he killed Belton.

## II. Testimony of Prior Sexual Activity

Griffin contends that the State was permitted to elicit improper impeachment evidence, over his objection, when Greiwe was questioned about her and Griffin's past sexual encounter with a third party. The State responds that Griffin failed to lodge a timely objection to the specific question of which he now complains.

In her opening statement, the deputy prosecutor claimed there was evidence that, after the other guests had left the Christmas dinner party, Belton, Griffin, and Greiwe "engaged in

5

group sex." (Tr. 14.) Greiwe was asked on cross-examination whether "group sex" happened and she testified that she did not consent to sexual activity with Belton and "did not believe" that Griffin did so. (Tr. 128-29.) She explained:

> I did not participate in group sex because I am a heterosexual female and Don Belton was a gay man and was not interested in having sex with me. So there was no group sex involved.

(Tr. 130.) On re-direct, when confronted with her prior statement to Batesville police officers, Greiwe admitted prior "experimentation" with females. (Tr. 154.) The deputy prosecutor then began a question with the phrase "And in fact, Michael has also," and Griffin's counsel objected "this is going too far afield." (Tr. 154.) After a discussion outside the presence of the jury, the following testimony was elicited:

> Prosecutor: Okay, Jessa, this is going to be a yes or no question. Have you and Michael ever engaged in prior sexual activity, consensually, with another person?
>
> Greiwe: Female, yes.

(Tr. 154.) When the question was enunciated in its entirety, Griffin did not claim that it constituted improper impeachment under Indiana Evidence Rule 613(b),[3] as he now argues. At best, he can be said to have objected on relevance grounds to a similar inquiry before the bench conference ensued. It is well-settled that a defendant may not present one ground for

---

[3] Evidence Rule 613(b) provides in relevant part, "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

an objection at trial and assert a different objection on appeal. Lashbrook v. State, 762 N.E.2d 756, 759 (Ind. 2002).

Moreover, Griffin does not explain how he was harmed by Greiwe's admission. Despite the deputy prosecutor's admonition to answer yes or no, Greiwe qualified her response as being applicable only to females. She never wavered in her testimony that neither she nor Griffin consented to sexual activity with Belton. Griffin has demonstrated no reversible error in this regard.

### III. Reckless Homicide Instruction

Griffin argues that the jury, if properly instructed, could have found that he recklessly killed Belton, but did not do so knowingly. Accordingly, he claims that the trial court abused its discretion by refusing to instruct the jury on reckless homicide.

In Wright v. State, 658 N.E.2d 563 (Ind. 1995), our Indiana Supreme Court set forth the proper analysis to determine when a trial court should, upon request, instruct the jury on a lesser included offense of the crime charged. The analysis contains three steps: (1) a determination of whether the lesser included offense is inherently included in the crime charged; if not, (2) a determination of whether the lesser included offense is factually included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute exists whereby the jury could conclude the lesser offense was committed but not the greater. Id. at 566-67. If the third step is reached and answered in the affirmative, the requested instruction should be given on the inherently or factually included lesser offense. Horan v. State, 682 N.E.2d 502, 506 (Ind. 1997).

7

An offense is an inherently included offense if (1) the alleged lesser included offense may be established by proof of the same material elements or less than all the material elements defining the crime charged, or (2) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense. Id.

Reckless homicide is the reckless killing of another. Ind. Code § 35-42-1-5. Murder is the intentional or knowing killing of another. Ind. Code § 35-42-1-1. Reckless homicide requires a reckless mens rea, while murder requires a knowing or intentional mens rea. Lyttle v. State, 709 N.E.2d 1, 2 (Ind. 1999). The only difference between the two is the mens rea element. Id. Thus, reckless homicide is an inherently included offense of murder. Fields v. State, 679 N.E.2d 1315, 1322 (Ind. 1997). The decision to give or refuse the instruction necessarily turned upon the existence or absence of a serious evidentiary dispute. A serious evidentiary dispute exists where the jury can conclude that the lesser offense was committed and the greater offense was not. Chanley v. State, 583 N.E.2d 126, 130 (Ind. 1991).

In refusing Griffin's tendered instruction, the trial court stated, "[H]ere I don't see any truly reckless behavior that has become an issue of serious evidentiary dispute. For that reason I am going to deny the reckless homicide." (Tr. 355.) Where such a factual finding is made on the existence or lack of a serious evidentiary dispute, in deference to the trial court's proximity to the evidence, we review the trial court's decision for an abuse of discretion. Champlain v. State, 681 N.E.2d 696, 700 (Ind. 1997).

In Horan, the appellant appealed the denial of a reckless homicide instruction. The

8

facts of the case were that Horan repeatedly kicked and punched the victim, even returning at a later time to hit and kick the victim again. Horan, 682 N.E.2d at 505-06. Our Indiana Supreme Court found that the denial of a reckless homicide instruction was proper because the conduct of the defendant was so extreme and the beatings so severe that "the jury could not conclude that the lesser offense was committed but not the greater." Id. at 508. The Court determined that Horan could not have engaged in this conduct without an awareness that the conduct could result in death. Id.

Subsequently, in Lyttle, the appellant also claimed that the trial court had erroneously refused to give a reckless homicide instruction. The Court noted that there was "overwhelming" evidence that the defendant had repeatedly struck his victim with a bat. Lyttle, 709 N.E.2d at 3. Consistent with Horan, the Lyttle Court determined that the defendant could not have engaged in the conduct of repeatedly striking his victim with a bat without an awareness that the conduct could result in death. Id. As the jury could not have found Lyttle guilty of the lesser included offense without also finding him guilty of the greater, the trial court did not abuse its discretion by denying the requested reckless homicide instruction. Id.

In this case, the evidence showed that Griffin inflicted twenty-one stab wounds on Belton, using a double-blade knife. He also slashed Belton's throat. Upon observing that Belton was no longer moving, Griffin did not summon help or attempt to aid Belton. Rather, Griffin wiped his knife on Belton's pants and fled.

One "knowingly" kills when he is "aware of a high probability" that his conduct might

9

kill. <u>Etienne v. State</u>, 716 N.E.2d 457, 463 (Ind. 1999). Here, as in <u>Horan</u> and <u>Lyttle</u>, the protracted nature of the conduct is such that Griffin could not have been without an awareness that his actions could result in Belton's death. The trial court did not abuse its discretion by finding no serious evidentiary dispute; the reckless homicide instruction was properly refused.

## IV. Sentence

Griffin contends that his sentence is inappropriate and should be revised pursuant to Indiana Appellate Rule 7(B). In <u>Reid v. State</u>, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

More recently, the Court reiterated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." <u>Cardwell v. State</u>, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. <u>See id.</u> at 1224. One purpose of appellate review is to attempt to "leaven the outliers." <u>Id.</u> at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the

culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

A person who commits murder has a sentencing range of between forty-five years and sixty-five years, with the advisory sentence being fifty-five years. Ind. Code § 35-50-2-3. Griffin asks that we reduce his advisory sentence to the minimum sentence, citing his military service, his past law-abiding conduct, and his cooperation with police officers in their investigation. The Indiana Constitution authorizes independent appellate review, although a trial court may have acted within its lawful discretion in determining a sentence. Abbott v. State, 961 N.E.2d 1016, 1018 (Ind. 2012).

The nature of the crime was particularly brutal. Belton was stabbed twenty-one times with a double-bladed knife. Additionally, his throat was slashed. Griffin then took steps to conceal his crime. He threw away his clothing and later called Belton's cell phone in a self-proclaimed attempt to "protect" himself and Griewe. (Tr. 125.)

However, we cannot ignore the pervasive evidence that the homicide was in response to a sexual assault. The Prosecutor conceded as much in closing argument, stating, "He killed Don Belton because he was humiliated. For some reason he thought that he should be humiliated for what happened on the 25th. He killed Don Belton because of what happened on the 25th, not what happened there in the kitchen." (Tr. 392.)

Greiwe testified during the State's case-in-chief and described waking up in bed beside Griffin and observing Belton with his mouth on Griffin's penis. She was shocked to then see Belton "having sex" with Griffin, who was not moving. (Tr. 115.) Greiwe began to

11

protest "is this okay" but passed out again. (Tr. 116.) When she awoke, Greiwe felt "freaked out" and she nudged Griffin and took him into another room. (Tr. 117.) Belton followed and climbed into bed beside Griffin. Greiwe fell back asleep, but awoke to again find Belton behind Griffin "having sex." (Tr. 118.)

There was also evidence that the sexual assault had been premeditated. Greiwe testified that Belton, a relatively new acquaintance, told her that he had no place to go for Christmas. Before dinner, he asked to spend the night "if he had too much to drink." (Tr. 138.) Belton mixed alcoholic drinks for others, but didn't seem to finish his drinks. Nonetheless, he claimed to be "so high" and "so drunk" that he wasn't "going anywhere." (Tr. 138.) Rita Griffin testified that Belton laid down "immediately after dinner." (Tr. 160.) Griffin testified that Belton had made a "big show of wanting to make sidecar drinks." (Tr. 244.)

Griffin also testified that, after the party, he had awakened feeling "drugged," which he described as similar to a time when he had been given morphine in Iraq. (Tr. 253.) He had no specific memory of the preceding hours, but was in pain and was bleeding; he concluded that he had been "sexually assaulted" or "raped."[4] Greiwe's recollection confirmed Griffin's suspicions. Although the jury's rejection of "sudden heat" is sustainable on appeal, we would be less than diligent in our assessment of the nature of the offense if we ignored such evidence.

---

[4] In Indiana, the alleged conduct is defined as "criminal deviate conduct" as opposed to "rape." Ind. Code § 35-42-4-2. However, Griffin was speaking in the common vernacular.

As to the character of the offender, Griffin has no criminal history and a very limited history of juvenile adjudications. He readily admitted to police officers that he had killed Belton, which may have been a largely pragmatic decision, as he had already confessed to his girlfriend and his sister. Griffin served in the Marine Corps and was honorably discharged, after receiving a Purple Heart for his injury during a roadside bombing. Griffin's actions at that time likely saved the lives of several other soldiers. He had recently begun to attend a veteran's therapy group, but had not received a specific diagnosis such as post traumatic stress disorder.

In sum, in light of the tragic circumstances surrounding the offense, and the character of the offender as he conducted himself prior to the instant aberration, we find a forty-five year sentence to be appropriate.

**Conclusion**

There is sufficient evidence to support Griffin's conviction for murder. He has demonstrated no abuse of discretion in the trial court's admission of evidence or instruction to the jury. Finally, we exercise our authority to revise the sentence to forty-five years.

Affirmed in part; reversed in part; remanded with instructions to issue a sentencing order consistent with this opinion.

BAKER, J., and DARDEN, J., concur.