## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2017, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew J. Borland
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyron Johnson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2017

Court of Appeals Case No.
71A03-1608-CR-1896

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1506-MR-7

**Bailey, Judge.**

# Case Summary

[1] Tyron Johnson ("Johnson") appeals his conviction for Murder, a felony.[1] We affirm.

# Issues

[2] Johnson presents two issues for review:

> I. Whether the State presented sufficient evidence to establish that Johnson committed Murder rather than Voluntary Manslaughter; and

> II. Whether the trial court abused its discretion by admitting into evidence two autopsy photographs with trajectory rods depicting the entrance and exit of bullets.

# Facts and Procedural History

[3] During the morning of June 12, 2015, Johnson was walking toward his mother's Mishawaka home with his girlfriend, Precious Jackson ("Jackson"). Jackson was carrying her infant son (who had been fathered by Johnson) in a baby carrier; her three pre-school children were following behind her. The couple began to engage in a heated argument about their relationship, drawing the attention of neighbors.

---

[1] Ind. Code § 35-42-1-1.

[4] Johnson drew a handgun from his waistband and fired six shots. Three of the shots struck Jackson and she died within minutes. Johnson ran from the scene, tossing away the gun and shedding his clothing as he fled.

[5] Johnson was located and arrested a few days later. On June 15, 2015, he was charged with Murder. His jury trial commenced on June 27, 2016. At trial, Johnson did not deny that he shot and killed Jackson, but argued that he was guilty of Voluntary Manslaughter rather than Murder because he shot her under sudden heat. The trial court provided the jury with an instruction on Voluntary Manslaughter but the jury found Johnson guilty of Murder, as charged. On July 25, 2016, Johnson was sentenced to sixty years' imprisonment, with five years suspended. He now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[6] Johnson concedes that he killed Jackson. However, he asks that we reverse his Murder conviction because the State failed to present sufficient evidence to rebut his claim that he acted in sudden heat.

[7] When a human being has been killed because of the knowing or intentional conduct of another, the starting point that our legislature has provided is the offense of Murder. *See* I.C. § 35-42-1-1 ("A person who knowingly or intentionally kills another human being … commits murder, a felony.") When sudden heat exists, that offense is mitigated. *See* I.C. § 35-42-1-3(b) ("The

existence of sudden heat is a mitigating factor that reduces what otherwise would be murder … to voluntary manslaughter.")

[8] Although Voluntary Manslaughter is a lesser-included offense of Murder, it is an atypical example of a lesser-included offense. *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). Sudden heat is not an element of Voluntary Manslaughter, but, to obtain a Murder conviction, the State must disprove the existence of sudden heat, beyond a reasonable doubt, when the defendant or the State has injected that issue. *Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999).

[9] "Sudden heat" is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Dearman v. State*, 743 N.E.2d 757, 760 (Ind. 2001). More than "mere words" is required to show sudden heat, and the provocation must be "sufficient to obscure the reason of an ordinary man," an objective as opposed to subjective standard. *See Stevens v. State*, 691 N.E.2d 412, 426 (Ind. 1997). The existence of sudden heat is a classic question of fact to be determined by the jury. *Jackson*, 709 N.E.2d at 329.

[10] Johnson testified that he and Jackson were arguing about suspicions of cheating and that they engaged in mutual yelling and name-calling. He claimed that they exchanged open handed blows before Jackson hit him with her shoe. Johnson described the actual shooting in terms suggesting either a tragic accident or an anger-fueled "blackout." (Tr. at 277.) According to Johnson's

testimony, he took out his gun because he thought Jackson would then "calm down," but, unbeknownst to Johnson, the safety mechanism was off and Jackson then "rushed him." (Tr. at 256.) He also testified that he was "so angry" that he was "not thinking." (Tr. at 258.) Finally, he asserted that Jackson "ran up" on him after the first shot and he "blacked out" after the first couple of shots. (Tr. at 259.)

[11] To the extent that the testimony of accident and anger may be said to have interjected the issue of sudden heat, the State bore a burden to disprove it. The State presented testimony from neighbors who heard a verbal argument immediately before Johnson drew his gun and shot Jackson. None of these witnesses described a blow with a shoe or provocation beyond mere words. The State also called as a witness Justin Jurgenson ("Jurgenson"), who had been incarcerated with Johnson. Jurgenson testified that Johnson had described the events as a "black out," but he then "snapped out of it," and shot Jackson again and then starting running. (Tr. at 141.) Jurgenson indicated that the "gist of" Johnson's confession was that Jackson tried to get up, Johnson walked over, and shot her again. (Tr. at 144.)

[12] The physical evidence indicated that Johnson emptied his gun; three of the six shots fired struck Jackson. The gun was examined and found not to be malfunctioning. The State presented sufficient evidence to permit the jury to conclude, beyond a reasonable doubt, that Johnson knowingly or intentionally killed Jackson and did not act in response to provocation sufficient to constitute sudden heat.

# Photographic Evidence

[13] During the forensic pathologist's testimony, the State sought to introduce into evidence State's Exhibits 181 and 182. These were autopsy photographs showing trajectory rods used by the pathologist to mark the entrance and exit of bullets into Jackson's body. Johnson objected that the photographs were "very graphic" and their prejudicial impact outweighed their probative value. (Tr. at 210.) On appeal, Johnson argues that the photographs had little, if any, evidentiary value because he had conceded that he fired the shots that caused Jackson's death.

[14] Because the admission and exclusion of evidence falls within the sound discretion of the trial court, the admission of photographic evidence is reviewed only for an abuse of discretion. *Corbett v. State*, 764 N.E.2d 622, 627 (Ind. 2002). Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence Rule 403. Even gory or revolting photographs may be admitted if they are relevant to some material issue or show scenes that a witness could describe orally. *Jackson v. State*, 597 N.E.2d 950, 963 (Ind. 1992). Photographs that depict injuries to a victim are generally relevant and admissible. *Custis v. State*, 793 N.E.2d 1220, 1224 (Ind. Ct. App. 2003), *trans. denied*. However, when autopsy photographs show the body in an altered state, a concern may arise that the photographs render the defendant responsible, in the minds of the jurors, for the cuts, incisions, and indignity of an autopsy. *Id.* at 1225.

Here, the pathologist testified that she had examined Jackson's body and discovered multiple gunshot wounds; she explained that she had used trajectory rods to mark the bullet paths. This testimony was sufficient to alleviate any concern that the jury would consider Johnson responsible for this bodily alteration. The State offered Exhibits 181 and 182 as visual aids to show the jury the wounds that the pathologist was describing. The relevance of the photographs is not lessened because Johnson conceded that he inflicted the wounds. *See Hines v. State*, 801 N.E.2d 634, 635 (Ind. 2004) (recognizing the general principle that the State is entitled to prove its case by evidence of its own choice and a defendant may not stipulate his way out of the full evidentiary force of the State's case). The challenged photographs were relevant, and their probative value not substantially outweighed by the danger of unfair prejudice.

# Conclusion

The State presented sufficient evidence to permit the jury to conclude that Johnson committed Murder and did not act in sudden heat. Johnson did not demonstrate that the trial court abused its discretion in the admission of evidence.

Affirmed.

Vaidik, C.J., and Robb, J., concur.