## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2017, 11:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Bertig and Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Reichler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2017

Court of Appeals Case No.
64A05-1611-CR-2626

Appeal from the Porter Superior Court.
The Honorable Mary R. Harper, Judge.
Trial Court Cause No.
64D05-1412-MR-10728

**Barteau, Senior Judge**

# Statement of the Case

[1] Thomas Reichler appeals his conviction of murder, a felony.[1] We affirm.

# Issue

[2] Reichler raises one issue, which we restate as whether the trial court erred in refusing to instruct the jury on the offense of reckless homicide as a lesser included offense of murder.

# Facts and Procedural History

[3] In the early morning hours of December 12, 2014, Nathaniel Sipe, Korey Izynski, and Reichler drove to a residential neighborhood in Portage, Indiana, planning to steal items from any unlocked cars they encountered. They walked through the neighborhood, checking cars to see if they were unlocked. They then ransacked the unlocked cars for money and items that could be pawned.

[4] Reichler had a handgun that had recently been reported as stolen. As they walked through the neighborhood, Reichler brandished it periodically and stated he was "on top of the world." Tr. Vol. 2, p. 221. He also said, "I could kill anyone." *Id.* Sipe and Izynski discussed trying to get the handgun away from Reichler because they thought he was "going to do something stupid," but they were unsuccessful. *Id.* at 222.

---

[1] Ind. Code § 35-42-1-1 (2014).

[5]     One of the houses they approached was owned by Alexius and Krystal Tapia. They had three children, who were eight years, six years, and six months old. Several cars were parked in the Tapias' driveway. They had installed a surveillance system that had multiple cameras placed outside and inside their home, with a monitor in their bedroom.

[6]     Alexius and Krystal were awakened by their dog barking. Alexius looked at the monitor and told Krystal he saw someone running away from their backyard. Alexius and Krystal rewound the recording and saw three men wearing hooded clothing walk onto their property and go between their house and their neighbors' house. One of the men approached their garage's rear door but became startled. As a result, the three men ran away. According to the recording, this occurred between 4:13 and 4:15 a.m.

[7]     Alexius decided not to call the police, but he picked up his handgun and went outside to check his yard and his neighbors' house. He did not see anything amiss, so he went back to bed with Krystal.

[8]     Reichler and his associates returned to the Tapias' house at around 5:30 a.m., when it was still dark. They walked up the driveway to search the Tapias' vehicles. The record does not explain how Alexius became aware of the intruders, but he awakened Krystal to tell her the men had returned. Next, he picked up his gun and hurried outside. Krystal followed him to the front door.

[9] When Alexius stepped outside, he shouted "freeze!" Tr. Vol. 1, p. 216; Tr. Vol. 2, p. 224. Sipe and Izynski fled, but Reichler was inside a car and could not escape before Alexius accosted him. Alexius and Reichler briefly scuffled.

[10] Meanwhile, Krystal returned inside to get their dog, a Rottweiler, out of its cage and let it outside, at which point Alexius shouted at her to call the police. Krystal retrieved her phone from her bedroom, and, when she went outside onto the front porch, she saw Alexius holding onto Reichler in the driveway, preventing him from leaving. The surveillance recording shows Alexius had grabbed Reichler by the collar and was pulling him toward the house. Alexius had his handgun pointed toward the ground, away from Reichler. He told Reichler "that he was going to wait right here until the cops came." Tr. Vol 1, p. 196. Reichler responded that "he didn't want any trouble." *Id.* at 197.

[11] At that point, Krystal heard gunshots. The recording shows that as Alexius was pulling Reichler, Reichler pulled out his handgun, pointed it at the back of Alexius' head at arm's length, and fired. The shot missed. Next, Alexius turned around and Reichler fired again, striking Alexius in the abdomen. Alexius returned fire and shot Reichler once, striking him in the left wrist and right arm.

[12] As Krystal was on the phone with the 911 dispatcher, she saw Alexius "hobbling" back to the house. *Id.* At the front door, Alexius said, "Babe, he shot me," before collapsing to the ground. *Id.* The two older children were awake at that point and stood in the living room, watching their father through

the open doorway as he lay bleeding on the ground. Reichler dropped his handgun in the driveway and ran away.

[13] Krystal told the dispatcher that her husband had been shot, and several police officers and paramedics arrived swiftly. The paramedics took Alexius to the hospital, but the bullet had severed his iliac artery and he died from massive internal bleeding. Meanwhile, at the officers' request, Krystal played the surveillance recording for the officers. Other officers searched the area, found Izynski as he was walking away, and took him into custody.

[14] Reichler met up with Sipe at Sipe's car, which was parked near the Tapias' house. They sat in the car for an hour, despite Reichler's wounds, until Sipe thought they could leave the neighborhood without attracting police attention. Sipe drove Reichler to a hospital in Michigan City. During the drive, Reichler told Sipe he "aimed for [Alexius'] head" and fired. Tr. Vol. 2, p. 233.

[15] Detectives learned Reichler was at a hospital and went there to interview him. Initially, Reichler told the detectives he and Sipe had been ambushed when they stopped to investigate a disabled automobile on the side of the road, and an assailant shot him. The police sent an officer to the location Reichler identified, but the officer failed to find anything to corroborate Reichler's story.

[16] When the detectives questioned Reichler's initial story, he admitted that he had been in Portage at the Tapias' house. Upon being told that Alexius had died, Reichler responded with "something to the effect of I figured." Tr. Vol. 1, p. 240. Reichler told the officers he was scared that Alexius might "beat him up."

*Id.* at 247. He never said that he thought Alexius was going to kill him. Reichler further stated that he "pulled the gun out of his pocket, raised his arm, and shot at [Alexius]" because he wanted to get away. Tr. Vol. 2, pp. 184-85. He conceded he aimed the gun at Alexius' head.

[17] The State charged Reichler with murder, a felony; two counts of theft, both Level 6 felonies; and one count of attempted theft, a Level 6 felony. Reichler moved the court to instruct the jury on voluntary manslaughter, involuntary manslaughter, and reckless homicide as lesser included offenses of murder, "if warranted by the evidence." Appellant's App. Vol. II, p. 78. He tendered proposed final jury instructions on self-defense, voluntary manslaughter, involuntary manslaughter, and reckless homicide, among other subjects.

[18] During the trial, the court and the parties conferred about final jury instructions off the record. Next, the court allowed the parties to state objections on the record, outside of the presence of the jury. Reichler objected to the court's refusal to instruct the jury on reckless homicide and involuntary manslaughter. The court overruled his objection and instructed the jury on voluntary manslaughter but not reckless homicide or involuntary manslaughter.

[19] During closing arguments, Reichler argued the jury should find him not guilty of murder because he acted in self-defense. He also claimed the State failed to prove he had the necessary mental culpability to commit murder and stated that the jurors could find him guilty of voluntary manslaughter as a lesser included

offense. The jury determined Reichler was guilty as charged. The court imposed a sentence, and this appeal followed.

## Discussion and Decision

Reichler argues his murder conviction should be reversed because the trial court erred in refusing to instruct the jury on reckless homicide as a lesser included offense of murder. The State responds that the trial court did not err because the evidence did not support an instruction on reckless homicide.

With respect to instructing the jury on a lesser included offense, our Supreme Court has stated:

> To determine whether to instruct a jury on a lesser included offense, the trial court must engage in a three-part analysis. The first two parts require the trial court to consider whether the lesser included offense is inherently or factually included in the greater offense. If it is, then the trial court must determine if there is a serious evidentiary dispute regarding the element that distinguishes the lesser offense from the principal charge.

*Leonard v. State*, 80 N.E.3d 878, 885 (Ind. 2017) (citations and quotation omitted). If the third step in the analysis is reached and answered in the affirmative, the requested instruction should be given on the lesser included offense. *Griffin v. State*, 963 N.E.2d 685, 690-91 (Ind. Ct. App. 2012).

The distinguishing element between murder and reckless homicide is culpability. *Leonard*, 80 N.E.3d at 885. Murder requires proof of a mental state of intentionally or knowingly killing another person. Ind. Code § 35-42-1-1. A person engages in conduct "knowingly" if, when he or she engages in the

conduct, he or she is aware of a high probability that he or she is doing so. Ind. Code § 35-41-2-2(b) (1977). By contrast, reckless homicide requires proof of a mental state of recklessness. Ind. Code § 35-42-1-5 (2014). A reckless act is one taken in "plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c).

[23] The State concedes that reckless homicide is an inherently included lesser offense of murder. Thus, the sole issue is whether there is a serious evidentiary dispute as to whether Reichler acted knowingly or recklessly. A serious evidentiary dispute exists where the jury can conclude that the lesser offense was committed and the greater offense was not. *Griffin*, 963 N.E.2d at 691.

[24] At this point we note our standard of review. Where a party claims a specific evidentiary dispute justifies the giving of an instruction on a lesser included offense, but the trial court does not make a finding as to the existence of a substantial evidentiary dispute, de novo review is the appropriate standard. *Brown v. State*, 703 N.E.2d 1010, 1020 (Ind. 1998). In this case, Reichler argued pulling the handgun out of his pocket was sufficient evidence of a reckless act, but the trial court made no finding as to an evidentiary dispute. We thus apply a de novo standard of review.

[25] In this case, viewing all the evidence presented at trial by both parties, we cannot conclude that the jury could have determined that Reichler committed reckless homicide but not murder or voluntary manslaughter. Hours before

shooting Alexius, Reichler had brandished a handgun while claiming he could kill anyone. When Alexius caught him, he later indicated that he was afraid of being beaten up but never said he was afraid of being killed. Alexius told Reichler he would have to stay there until the police arrived, which a reasonable person should have interpreted as an indication Alexius did not intend to kill or seriously injure Reichler. In response, the recording shows Reichler aimed the gun at the back of Alexius' head from arm's length and fired. When Alexius turned around, Reichler fired again, shooting him in the stomach. Reichler later told Sipe and the police he had aimed at Alexius' head for the first shot. He also stated he just wanted to get away.

[26] This evidence establishes that Reichler shot twice at Alexius knowing there was a high probability that Alexius would be killed, rather than that he fired without regard for the risk of Alexius' death. *See Pinkston v. State*, 821 N.E.2d 830, 840 (Ind. Ct. App. 2004) (no error in refusing jury instruction on reckless homicide in a murder prosecution; defendant shot the victim twice, once at close range, indicating the act was done knowingly or intentionally), *trans. denied*. The trial court did not err in denying Reichler's instruction on reckless homicide because there was no substantial evidentiary dispute.

# Conclusion

[27] For the reasons stated above, we affirm the judgment of the trial court.

[28] Affirmed.

Bailey, J., and Barnes, J., concur.