

FILED

May 14 2020, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott King
Lakeisha Murdaugh
King, Brown & Murdaugh, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Steve Landske, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 14, 2020 <br><br> Court of Appeals Case No. 19A-CR-2528 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Rex W. Kepner, Special Judge <br><br> Trial Court Cause No. 45G01-1808-MR-15 |

**Najam, Judge.**

## Statement of the Case

William Steve Landske appeals his conviction for murder, a felony, following a jury trial. He presents two issues for our review:

1.    Whether the State presented sufficient evidence to negate Landske's contention that he was acting under sudden heat.

2.    Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## Facts and Procedural History

Landske and his wife, Sue Landske, were married for many years, and they ran various businesses together. The Landskes were friends with Tracy Edward "Ted" Page, a lawyer and former Lake Superior Court Magistrate, who had "do[ne] taxes for the Landske family" for approximately thirty years. Tr. Vol. 2 at 121. In the course of that work, Page had accumulated scores of documents relevant to the Landskes' tax returns.

Sue, a former State Senator, died in February 2015. Landske, who was then eighty years old, had difficulty managing his affairs, and one of his daughters, Cheryl Boisson, became Landske's attorney-in-fact. Page continued in his role as tax preparer for the Landskes, and after Sue died, Landske continued to deliver tax-related documents to Page. At one point, Landske and Boisson dropped off eight or ten large boxes of Landske's "tax[-]related documents" to Page at his home. Appellant's Br. at 7.

In the years following Sue's death, Landske and other family members became concerned and frustrated that Page had not been diligent in handling the

family's taxes, and they decided to ask Page to return their documents. Page agreed, and they made an appointment to meet Page at his home on August 15, 2018. On that day, when Boisson and her sister Jackie Basilotta were visiting with Landske in anticipation of their meeting with Page, Boisson found Landske in his bedroom sitting with Sue's ashes. Landske told Boisson that he was "talking to mom." *Id.* at 43. Basilotta then entered the bedroom, and Landske began "expressing some opinions" about Page. *Id.* at 44. Landske twice asked, "what has Ted done these last three years?" *Id.* Basilotta then told Landske that he did not need to go to Page's home—that she and Boisson would take care of everything. But Landske insisted that he would go with them.

[6] When Landske and his daughters arrived at Page's home in Hobart, Page and his husband, Kevin Swanson, met them and showed them approximately forty bags and boxes of documents assembled on the floor in the foyer. While Boisson and Basilotta began carrying boxes outside to their vehicles, Landske and Page left the foyer and walked outside into the yard together. Landske told Page he wanted to talk, put his arm around Page, and, within moments, pulled a handgun from his pocket and shot Page four times, first in his abdomen and then in his back.[1] Page fell to the ground and died immediately. One of

---

[1] Landske asserts in his brief at page 11 that he shot Page twice, but the coroner's report admitted at trial states that Page died from "(4) gunshot wounds." State's Ex. 7.

Landske's daughters called 9-1-1, and the officers who responded arrested Landske.

[7] Later, Landske agreed to give a statement to law enforcement. Landske stated that he had been "pissed off" at Page because of Page's procrastination in preparing his taxes. State's Ex. 26. And Landske stated that, when he put his arm around Page, he knew he was going to shoot him.

[8] The State charged Landske with murder. At his jury trial, Landske argued that he had killed Page in the heat of the moment as a result of Page's provocation. Thus, Landske asserted that he could only be convicted of voluntary manslaughter, not murder. When Landske requested a voluntary manslaughter instruction, the parties and the trial court discussed, at length, whether there was a "serious evidentiary dispute" on the question of sudden heat, which is required to prove voluntary manslaughter. Tr. Vol. 3 at 52. The court stated that it was a "close call." *Id.* at 72. In the end, the court instructed the jury on both murder and voluntary manslaughter. The jury found Landske guilty of murder. The trial court entered judgment of conviction and sentenced Landske to the advisory sentence of fifty-five years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## *Issue One: Sudden Heat*

[9] Once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt. *Whitt v. State*, 91 N.E.3d

1082, 1093 (Ind. Ct. App. 2018), *trans. denied.* Landske contends that the State's evidence was insufficient to disprove his defense. In particular, Landske contends that the State failed to rebut the evidence that, when he shot Page, he was acting under sudden heat. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[10] To prove murder, the State had to show that Landske knowingly or intentionally killed Page. Ind. Code § 35-42-1-1 (2019). However, if Landske knowingly or intentionally killed Page while acting under sudden heat, Landske committed voluntary manslaughter. I.C. § 35-42-1-3. In other words, the existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. *Id.* Once a defendant places sudden heat into issue, the State bears the burden of negating the presence of sudden heat beyond a reasonable doubt. *Earl v. State*, 715 N.E.2d 1265, 1267 (Ind. 1999). The State may meet this burden by rebutting the defendant's evidence or by affirmatively showing in the State's case-in-chief that the defendant was not acting in sudden heat when the killing occurred. *Id.*

"Sudden heat exists when a defendant is 'provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.'" *Brantley v. State*, 91 N.E.3d 566, 572 (Ind. 2018) (quoting *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015)). It involves an "impetus to kill" that arises "suddenly." *Suprenant v. State*, 925 N.E.2d 1280, 1283 (Ind. Ct. App. 2010), *trans. denied*. Words alone, however, are not sufficient provocation to reduce murder to manslaughter. *Id.*

[11] Here, Landske maintains that the evidence shows the shooting was a "quickly transpiring tragedy" that happened because he "lost it" when he saw "the ocean of bags that he believed Page was taking care of on his behalf." Appellant's Br. at 11. But the undisputed evidence shows that, before he arrived at Page's home the day of the shooting, Landske knew there would be a large number of documents there, which had accumulated over many years, so that was not a surprise. Landske's angry reaction upon seeing the bags and boxes was entirely within his control and not attributable to anything Page did to him. Landske had insisted that he accompany his daughters to Page's home, after they had told him that he did not need to go. The Landskes had made an appointment with Page, and there was nothing sudden or unanticipated about Landske's meeting with Page.

[12] Landske does not contend or suggest that, other than returning the documents, Page did anything on August 15, 2018, to provoke him. Indeed, the evidence shows that, only a short time after Landske had arrived at Page's home,

Landske and Page were standing next to each other in the yard when Landske suddenly shot Page. Landske concedes that he and Page "were actually on good terms" and that there was "no heated argument or physical confrontation" before the shooting. Appellant's Br. at 11. Nevertheless, he contends that he "became enraged when he observed the ocean of bags." *Id.* We are not persuaded that the sight of a large number of tax-related documents in Page's foyer was a provocation sufficient to cause a sudden "impetus to kill." *Suprenant*, 925 N.E.2d at 1283. Landske confuses irritation and consternation with provocation.

[13] Landske also contends that there is no evidence of premeditation, but this argument is misplaced. The State was not required to prove premeditation to convict Landske of murder. And neither does the absence of premeditation, in itself, show that Landske acted under sudden heat. To the extent Landske contends that there is insufficient evidence to prove he intended to kill Page, we cannot agree. It is well settled that "[t]he intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death." *Taylor v. State*, 681 N.E.2d 1105, 1111 (Ind. 1997). The evidence shows, and Landske admitted, that he shot Page at close range, which proves that he intentionally killed him. *Id.*

[14] "'Existence of sudden heat is a classic question of fact to be determined by the jury.'" *Jackson v. State*, 709 N.E.2d 326, 329 (Ind. 1999) (quoting *Fisher v. State*, 671 N.E.2d 119, 121 (Ind. 1996)). The jury's conviction of Landske for murder was a rejection of his sudden heat defense. *Id.* Findings of fact are the province

of the jury. Landske asks that we reweigh the evidence on appeal, which we cannot do. The jury found no sudden heat, and we will not disturb its finding. Accordingly, we hold that in its case-in-chief the State presented evidence beyond a reasonable doubt that Landske was not acting under sudden heat when he killed Page.

### *Issue Two: Sentencing*

Landske next contends that his advisory sentence of fifty-five years is inappropriate in light of the nature of the offense and his character. As our Supreme Court has made clear:

> The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision. Ind. Const. art. 7, §§ 4, 6; *Serino v. State*, 798 N.E.2d 852, 856 (Ind. 2003). This authority is implemented through Indiana Appellate Rule 7(B), which permits an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Serino*, 798 N.E.2d at 856. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The burden is on the defendant to persuade the reviewing court that the sentence is inappropriate. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

*Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018) (per curiam).

Further:

> Indiana Appellate Rule 7(B) is a "rare" avenue for appellate relief that is reserved "for exceptional cases." *Livingston v. State*, 113

N.E.3d 611, 612-13 (Ind. 2018) (per curiam). Even with Rule 7(B), "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell*, 895 N.E.2d at 1222). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* Absent such a "sufficiently compelling" evidentiary basis, we will not "override the decision of . . . the trial court." *Id.*

*Sorenson v. State*, 133 N.E.3d 717, 728 (Ind. Ct. App. 2019) (alteration and omission original to *Sorenson*), *trans. denied*. And we have explained that the revision of a sentence under Appellate Rule 7(B) requires that an appellant "'demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character.'" *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017) (quoting *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008)) (emphasis original to *Williams*), *trans. denied*. Regarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006). The advisory sentence for murder is fifty-five years, with a sentencing range from forty-five to sixty-five years. I.C. § 35-50-2-3. Here, again, the trial court imposed the advisory sentence of fifty-five years.

[17] In support of his contention that his sentence is inappropriate, Landske relies on *Griffin v. State*, 963 N.E.2d 685 (Ind. Ct. App. 2012), a partially analogous case in which the trial court also gave both a murder and an involuntary

manslaughter instruction and the defendant was convicted of murder and sentenced to fifty-five years. As here, the crime in *Griffin* was brutal. On appeal, Griffin contended that his sentence was inappropriate and should be revised pursuant to Indiana Appellate Rule 7(B). Like Landske, Griffin had no criminal history, cooperated with law enforcement, had served in the military, and was honorably discharged.

[18] While the jury rejected Griffin's voluntary manslaughter defense, there was "pervasive evidence" which showed that the homicide was in response to a sexual assault. *Id.* at 692-93. We concluded that, "[a]lthough the jury's rejection of 'sudden heat' is sustainable on appeal, we would be less than diligent in our assessment of the nature of the offense if we ignored such evidence," and we revised Griffin's sentence to forty-five years. *Id.* at 693. In sum, while the sexual assault was not a mitigating factor, we held that, as the victim of a crime, Griffin was entitled to some consideration in sentencing. *Griffin* is distinguishable from the instant case. Here, there was nothing in Page's conduct that would remotely entitle Landske to mitigation of his sentence. Landske's reliance on *Griffin* is misplaced.

[19] Still, Landske contends that the nature of the offense, while "horrific," does not support the advisory sentence. Appellant's Br. at 13. Again, Landske maintains that Page's murder was not premeditated, but was "indisputably caused by sudden heat." *Id.* And Landske describes the murder as having been the result of "tension" due to Page's mishandling of the Landske family taxes and because Landske was "a depressed widower faced with potential[ly] serious

IRS issues." *Id.* at 13-14. However, Landske shot Page, his friend of some thirty years, at point blank range, over Page's inattention to Landske's taxes. And Landske committed the murder in the presence of Page's husband and Landske's daughters. We cannot say that Landske's fifty-five-year sentence is inappropriate in light of the nature of the offense.

[20] Landske also contends that his sentence is inappropriate in light of his character. He points out that he has no criminal history, he served in the military and received an honorable discharge, he confessed to killing Page, and he has the support of friends and family. However, we agree with the trial court's description and assessment of Landske's conduct, that whether or not the murder was premeditated, Landske's behavior toward Page was methodical and deliberate, that he delivered not one shot but multiple shots to Page, point blank and at close range, all of which reflects poorly on his character. And then Landske calmly recounted the details of the murder to law enforcement in a matter-of-fact manner with no apparent indication of remorse. The trial court's judgment in sentencing is entitled to considerable deference. *Cardwell*, 895 N.E.2d at 1222. We cannot say that Landske's advisory sentence is inappropriate in light of his character.

[21] Affirmed.

Kirsch, J., and Brown, J., concur.