

**FILED**

May 09 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Loren David Gary,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 9, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2067<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Sean M. Persin,<br>Judge<br><br>Trial Court Cause No.<br>79C01-1711-F1-6 |

**May, Judge.**

[1] Loren David Gary appeals his convictions of Level 1 felony attempted murder,[1] Level 5 felony intimidation,[2] and Level 6 felony intimidation.[3] He presents multiple issues, which we consolidate and restate as:

> 1. Whether the State presented sufficient evidence Gary committed Level 1 felony attempted murder and Level 6 felony intimidation, and

> 2. Whether Gary's convictions of Level 1 felony attempted murder and Level 5 felony intimidation subject him to double jeopardy.

We reverse and remand in part and affirm in part.

## Facts and Procedural History[4]

[2] Sometime in October 2017, Gary moved in with his nephew, Jeramy Deboise, Jeramy's girlfriend, and Jeramy's infant daughter. On the evening of November 4, 2017, Gary drank to intoxication. Gary was peaceful at first, but then left the house to go to the garage. While in the garage, he called his sister, Tamara Beard, who is Jeramy's mother, and told her he was "going to shoot

---

[1] Ind. Code § 35-41-5-1 (2014) (attempt); Ind. Code § 35-42-1-1 (2014) (murder).

[2] Ind. Code § 35-45-2-1(b)(2) (2017).

[3] Ind. Code § 35-45-2-1(b)(1) (2017).

[4] We held oral argument in this matter on March 21, 2019, at Indiana University East in Richmond, Indiana. We thank University staff for their hospitality and counsel for their able presentations.

Jeramy in the shoulder and [she] can figure the rest of it out." (Tr. Vol. II at 97.) Tamara called Jeramy to tell him what Gary said and then she called 911.

[3] Jeramy confronted Gary and asked him if anything was wrong. Gary replied "fuck yeah" and "looked quite angry." (*Id*. at 106.) Gary told Jeramy that he "was going to grab the gun and shoot [him] in the shoulder." (*Id*.) Gary then walked into a back room, and Jeramy heard "something that sounded like a gun cocking." (*Id*. at 107.) Jeramy gathered his girlfriend and infant daughter, and they ran out of the house. Upon arriving at a neighbor's house, Jeramy called Tamara and 911.

[4] Tippecanoe County Sheriff's Lieutenant Travis Dowell was dispatched to the scene and arrived in a police-issued Dodge Ram truck with Sheriff's Office decals on the side. Lieutenant Dowell did not turn on the truck's lights or siren because he did not "want the person in the house if they're that agitated to get more agitated . . . [and also] not to alert the suspect that we were coming." (*Id*. at 156.) Upon his arrival at the scene, Lieutenant Dowell observed Gary hiding behind a car. He exited his vehicle and yelled "show me your hands." (*Id*. at 157.)

[5] Gary fired a shot that hit the front license plate holder on Lieutenant Dowell's truck. Lieutenant Dowell ducked behind the truck door and then moved to the rear of the truck for cover. Several times Lieutenant Dowell ordered Gary to drop the weapon, but Gary did not do so. Instead Gary positioned himself over the trunk of a car with his gun pointed at Lieutenant Dowell. At some point,

Gary's gun jammed. Lieutenant Dowell then got into position to return fire, and Gary threw his gun on the ground and raised his arms. Other officers, who arrived shortly thereafter, arrested Gary. The entire incident was captured on Lieutenant Dowell's dashboard camera.

[6] The State charged Gary with Level 1 felony attempted murder, Level 5 felony attempted battery,[5] Level 5 felony intimidation, Level 6 felony pointing a firearm,[6] Level 6 felony criminal recklessness,[7] and Level 6 felony intimidation. The State also sought a sentencing enhancement for the use of a firearm in the crime.[8] Following a jury trial on all but the sentencing enhancement allegation, Gary was found guilty of all charges. The trial court then held a bench trial on the State's request for a sentencing enhancement based on the use of a firearm in the crime and determined Gary had used a firearm in the commission of the crime. The trial court vacated the attempted battery, pointing a firearm, and criminal recklessness convictions on double jeopardy grounds. On August 10, 2018, the trial court sentenced Gary to thirty-three years for attempted murder, four years for the Level 5 felony intimidation conviction enhanced by five years for the use of a firearm, and two years for the Level 6 felony intimidation conviction. The attempted murder and enhanced Level 5 felony intimidation

---

[5] Ind. Code § 35-41-5-1 (2014) (attempt); Ind. Code § 35-42-2-1(h) (2017).

[6] Ind. Code § 35-47-4-3(b) (2014).

[7] Ind. Code § 35-42-2-2(b)(1) (2014).

[8] Ind. Code § 35-50-2-11 (2016).

sentences were to be served concurrently, but consecutive to the Level 6 felony intimidation sentence for an aggregate sentence of thirty-five years, with three years suspended to probation.

# Discussion and Decision

## Sufficiency of Evidence

[7] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

### *Level 1 Felony Attempted Murder*

[8] The statutes suggest that, to prove Gary committed Level 1 felony attempted murder, the State had to demonstrate only that Gary "act[ed] with the culpability required for commission" of murder and "engag[ed] in conduct that

constitute[ed] a substantial step toward commission of the crime." *See* Ind. Code § 35-41-5-1 (2014) (elements of attempt). Murder is defined as "knowingly or intentionally kill[ing] another human being[.]" Ind. Code § 35-42-1-1(1) (2017). However, our Indiana Supreme Court long ago held that, for a person to be convicted of attempted murder, "the State must prove beyond a reasonable doubt that the defendant [acted] with intent to kill the victim." *Sprandlin v. State,* 569 N.E.2d 948, 950 (Ind. 1991).

[9]     In *Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind. 1998), our Indiana Supreme Court clarified the holding in *Sprandlin*:

> In many attempted murder cases, however, the victim, the result, or both, are more difficult to ascertain. A drive-by shooting is the paradigm problematic attempted murder case. In such cases it is often unclear whether the defendant intended to murder or to batter, whether he knew of a high probability of death or a touching, or whether he simply recklessly disregarded either. Such ambiguity carries with it the risk that the jury will fail to distinguish between levels of culpability, imposing a penalty for reckless actions, rather than for intentional or knowing ones. In order to ensure that juries sort out the higher level of culpability in attempted murder prosecutions, we construed the attempt statute in *Spradlin* to require proof that the defendant intended death.

[10]    Finally, in *Ramsey v. State*, 723 N.E.2d 869 (Ind. 2000), our Indiana Supreme Court reaffirmed the holding in *Sprandlin* and harkened back to an earlier opinion in noting:

The attempt must be to effect the proscribed result and not merely to engage in proscribed conduct. An instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill.

*Ramsey*, 723 N.E.2d at 871 (quoting *Smith v. State*, 459 N.E.2d 355, 358 (Ind. 1984)).

[11] Gary argues the State did not present evidence he "maintained specific intent to kill Lieutenant Dowell." (Br. of Appellant at 14.) Accordingly, Gary asserts, he could not be convicted for attempted murder. We disagree.

[12] In *Corbin v. State*, 840 N.E.2d 424 (Ind. Ct. App. 2006), we summarized existing precedent regarding the State's burden in presenting evidence of intent in an attempted murder case:

> Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime. *Gall v. State*, 811 N.E.2d 969, 975 (Ind. Ct. App. 2004). . . . Further, our supreme court held that discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

*Id*. at 429. Here, Gary called his sister to tell her he intended to shoot Jeramy, then acted angrily and aggressively towards Jeramy to the extent that Jeramy fled the house with his family. When Lieutenant Dowell arrived on the scene, Gary was already positioned behind a car in the driveway, which indicates he

was preparing for a confrontation. Gary fired a shot at Lieutenant Dowell after Lieutenant Dowell exited his marked police vehicle and commanded Gary to show him his hands. Evidence at trial indicated the bullet, had it not hit the license plate, likely would have struck Lieutenant Dowell. Finally, Gary did not surrender to Lieutenant Dowell until his gun jammed and Lieutenant Dowell assumed a defensive shooting stance. Considering the nature and circumstances surrounding the attack, along with the fact Gary fired a deadly weapon toward Lieutenant Dowell, we conclude the State presented sufficient evidence of Gary's intent to kill. *See Perez v. State*, 872 N.E.2d 208, 213-4 (Ind. Ct. App. 2007) (discharging a weapon in the direction of the victim coupled with related circumstances sufficient to prove intent to kill in an attempted murder case), *trans. denied*.

### Level 6 Felony Intimidation

[13] To prove Gary committed Level 6 felony intimidation against Jeramy, the State had to demonstrate Gary communicated a threat to commit a forcible felony against Jeramy with the intent that Jeramy engage in conduct against his will or "be placed in fear of retaliation for a prior lawful act[.]" Ind. Code § 35-45-2-1(b)(1) (2017). Gary concedes he threatened Jeramy but argues the State did not present sufficient evidence that he did so with (1) the intent to place Jeramy in fear of retaliation for a prior lawful act or (2) to get Jeramy to engage in conduct against his will.

[14] Gary directs us to Jeramy's testimony at trial to support his argument:

> [State]:      Prior to your uncle [Gary] telling you that he was going to shoot you in the shoulder I think you said had [sic] you and your uncle had any verbal altercations that evening at all?
>
> [Jeramy]:    No.
>
> [State]:      And had you made any threats against him that evening?
>
> [Jeramy]:    No.

(Tr. Vol. II at 111.)  Gary asserts that exchange indicates Jeramy "didn't even know that he was being intimidated."  (Br. of Appellant at 23.)

[15]  However, the State directs us to Gary's statements during closing argument wherein he admitted he committed Level 6 felony intimidation against Jeramy:

> [Defense]:    Did he communicate a threat to his nephew?  Yes, he did.  Did he place him in fear?  He did.  Was [it] a threat to commit a forcible felony?  Yeah, I'm going to shoot you in the shoulder.  Okay.  The state's proved that, no defense, no dispute. . . . I believe that intimidation on Count 6 on Mr. Deboise has been proven. . . . We ask that you return a not guilty verdict on all counts but . . . the intimidation of Jeramy Debois [sic][.]

(Tr. Vol. III at 22, 24.)

[16]  "Under the invited error doctrine, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct."  *Stewart v. State*, 945 N.E.2d 1277, 1285 (Ind. Ct. App. 2011), *trans. denied*.  Here, Gary asked the jury to return a guilty verdict on the Level 6

felony intimidation charge and conceded that the State had carried its burden to present evidence to prove he committed the crime. Under the invited error doctrine, he cannot now argue the State's evidence was insufficient. *See Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) ("invited error precludes relief from counsel's strategic decisions gone awry"), *reh'g denied*, *cert. denied* 135 S. Ct. 970 (2015), *reh'g denied* 135 S. Ct. 1534 (2015).

## Double Jeopardy

[17]  Article 1, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Two or more offenses are the same if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).[9] Gary contends his simultaneous convictions for Level 5 felony intimidation against Lieutenant Dowell and Level 1 felony attempted murder of Lieutenant Dowell violate his right to free of double jeopardy under the actual evidence test. We agree.

[18]  Here, the State presented evidence Gary pointed his gun at Lieutenant Dowell, fired the gun hitting the license plate on the officer's vehicle, and continued to point the gun at Lieutenant Dowell until the gun jammed and Lieutenant

---

[9] The holding in *Richardson* was modified by *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013). However, *Garrett* further clarified the holding in *Richardson* as it applied to retrial after an acquittal, which is not at issue in this case. *Id*. at 723.

Dowell assumed a defensive stance to return fire. Because it is possible that some or all of that evidence could also be used to prove Gary intimidated Lieutenant Dowell, we conclude Gary's convictions of both violate his right against double jeopardy. *See Curry v. State*, 740 N.E.2d 162, 166-7 (Ind. Ct. App. 2000) (holding violation of double jeopardy based on actual evidence test in an incident involving a "single incident of brutality"), *trans. denied*. We accordingly vacate Gary's Level 5 felony conviction of intimidation of Lieutenant Dowell.[10]

# Conclusion

[19] The State presented sufficient evidence Gary committed Level 1 felony attempted murder. Gary conceded at trial that he committed Level 6 felony intimidation, and thus any insufficiency of evidence argument is precluded by the invited error doctrine. However, the trial court subjected Gary to double jeopardy when it convicted him of both Level 1 felony attempted murder and Level 5 felony intimidation because the jury reasonably could have relied upon the same evidence to convict Gary on both counts. Therefore, we vacate Gary's conviction of Level 5 felony intimidation, remand for reallocation of the

---

[10] Gary also argues the State did not present sufficient evidence he committed Level 5 felony intimidation of Lieutenant Dowell. That issue is, however, moot because we vacate the conviction on double jeopardy grounds.

gun enhancement, and summarily affirm the remainder of the trial court's decision.

[20]     Reversed and remanded in part; affirmed in part.


Baker, J., and Riley, J., concur.